# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, et al., | |
| *Plaintiffs*, | |
| v. | C.A. No.: |
| DONALD J. TRUMP, et al., | |
| *Defendants*. | |

**<u>DECLARATION OF PILAR VAILE</u>**

Pursuant to 28 U.S.C. § 1746, I, PILAR VAILE, hereby declare as follows:

1.      I am a resident of the State of New Mexico. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2.      I am currently employed by the New Mexico Public Employee Labor Relations Board (NM-PELRB) as the Executive Director, effective January 17, 2025, and served as the NM-PELRB Deputy Director from 2005 through 2009. My experience with and knowledge of labor relations and Federal Mediation and Conciliation Service's (FMCS's) mediation and arbitration services is based upon my 20+ year career as a labor relations professional, 15 years of which has been spent as a private Arbitrator.  As a private labor Arbitrator, I was a listed Arbitrator or "Panelist" with FMCS, as well as with the American Arbitration Association (AAA) and the State labor boards for California, Oregon and Washington, among others. Since 2018, I have been a member of the National Academy of Arbitrators (NAA) and currently serve on the NAA's Board of Governors,

3.      I submit this declaration in connection with Executive Order 14,238, "Continuing the Reduction of the Federal Bureaucracy," which directed seven federal agencies including FMCS, to eliminate any non-statutory components and functions to the maximum extent consistent with applicable law, and to reduce the performance of any statutory functions and associate personnel to the minimum presence and function required by law.  This EO will affect and likely impair NM-PELRB operations and broader New Mexico state interests, as laid out in state statutes.

4.      As Executive Director of the NM-PELRB, I hear and/or am made aware of public sector labor disputes involving or implicating FMCS mediation and/or arbitration services. Additionally, as Director, I keep myself apprised of news affecting U.S. collective bargaining in general, as well as particular issues likely to have an impact on the NM-PELRB's operations.

5.      In my role, I do and have communicated with both federal labor Agency staff – including local FMCS mediation Staff – and New Mexico labor law practitioners that appear regularly before the NM-PELRB.  We do and have discussed changes in federal law and/or federal labor agency operations and their impact upon NM-PELRB operations and/or harmonious and cooperative collective bargaining relationships between New Mexico public employers, unions and public employees.  Topics of our communications have included recent changes involving the FMCS, and the effect upon its operations of Executive Order 14,238, "Continuing the Reduction of the Federal Bureaucracy", dated March 14, 2025.

6.      NM-PELRB is responsible for enforcement of the Public Employee Bargaining Act (PEBA), NMSA 10-7E-1 et seq. The PEBA

> guarantee[s] public employees the right to organize and bargain collectively with their employers, to promote harmonious and cooperative relationships between public employers and public employees and to protect the public interest by ensuring, at all times, the orderly operation and functioning of the state and its political subdivisions.

See NMSA § 10-7E-2 (Purpose of act).  Thus, the PEBA vests the PELRB with authority over all general collective bargaining matters among public employers, labor organizations and individual public employees subject to the Act.  Enforcement of PEBA routinely requires the following primary types of enforcement activities on the part of the NM-PELRB:

    a.  processing Prohibited Practice Complaints (PPCs)
    b.  processing Representation Petitions;
    c.  monitoring Local Boards for compliance with PEBA; and
    d.  rulemaking activity as needed.

Time and staffing permitting, the NM-PELRB also engages in outreach and training among its constituent users; monitors and reports to the Board and public on major trends affecting non-federal public sector labor relations in New Mexico; and creates and maintains educational materials such as the NM-PELRBs Practice Manual and the PEBA Keyword and Phrase Index on our website.

7.      Pursuant to Section 18 of PEBA, non-federal public sector labor disputes in New Mexico regarding negotiation impasse are required to be resolved by FMCS mediation services and, if needed, FMCS arbitration services. See § 10-7E-18 (laying out a comprehensive statutory scheme, with precise deadlines, for use by bargaining representatives at State and local government levels); see also NMSA § 10-7E-4(J) ("'impasse' means failure of a public employer and an exclusive representative, after good-faith bargaining, to reach agreement in the course of negotiating a collective bargaining agreement"). This is a default mechanism to resolve collective bargaining disputes and thereby avoid prohibited strikes or lockout activity. See, e.g., US DOJ, Office of Justic Programs, "Arbitration and the Public Employee - An Alternative to the Right to Strike | Office of Justice Programs", available at https://www.ojp.gov/ncjrs/virtual-library/abstracts/arbitration-and-public-employee-alternative-right-strike (last accessed 4/2/25) ("[s]ince the strike is generally recognized as an integral part of the collective bargaining process, effective alternatives must be found to resolve the problems of public employees"). Additionally, pursuant to Sections 19(G) and 20(D) of PEBA, the NM-PELRB is charged with hearing and resolving allegations of breach of a collective bargaining agreement (CBA). Although a prohibited practice complaint (PPC) for breach of contract may be deferred to grievance arbitration initiated pursuant to a CBA, in New Mexico such a CBA will usually expressly reference use of FMCS arbitration services for contract disputes as well. See NMSA § 10-7E-19(H); and § 10-7E-20(D) (make it a prohibited labor practice to refuse or fail to comply with a CBA or other agreement with the labor-management counterpart); NMRA 11.21.3.22 (Arbitration deferral). This is not unusual

3

– most CBAs within the Western half of the states expressly incorporate FMCS strike list or paneling services by name, for purposes of arbitration. (AAA tends to dominate the arbitrator paneling services in the Eastern half.)  Additionally, my communications with labor relations professionals in New Mexico suggest that many non-federal public sector labor contract disputes in New Mexico may not come before the NM-PRLB because they were, up until recently, resolved at a lower level with free or reduced cost mediation services provided by the FMCS

8.    If FMCS ceased providing mediation and/or arbitration services within the non-federal public sector, New Mexico's public sector labor relations statutory scheme <u>and</u> public sector CBAs throughout the State would be frustrated and impaired.  This will occur in several ways, because FMCS services are directly and indirectly implicated throughout PEBA, as generally described in Paragraph 7.  Some specific examples of the impairment include the following:

a.    First, as noted, FMCS is cited by name in Section 18 of PEBA, regarding the mediation and arbitration of "impasse" or "interest" disputes, which arise when management-side and union-side negotiators are unable to reach an agreement on the terms of a CBA, after bargaining in good faith.  <u>See</u> § 10-7E-18; <u>see also</u> NMSA § 10-7E-4(J).  Although FMCS is cited in Section 18 by name, I do not anticipate significant immediate impact on NM-PELRB operations due to FMCS's discontinuation of impasse mediation and/or arbitration services in the non-federal public sector.  That is because the NM-PELRB only monitors impasse issues if we learn about them, but we lack authority to appoint FMCS mediators or arbitrators (despite some statutory language in Section 18 that would seem to suggest the contrary).

b.    However, based upon my conversations with area labor practitioners and a former FMCS mediator who worked in New Mexico when EO 14,238 was issued, it is my understanding

4

and belief that this will create <u>and is already creating</u> significant obstacles to parties resolving their impasse disputes.  Historically FMCS has provided mediations services, free of charge or at reduced cost, to labor relations actors in State and local government sectors, as well as to federal and private sector disputants, to avoid negotiation impasses.  On information and belief, there are no other comparable programs or grants available to fulfill the now unmet needs.  Certainly, the NM-PELRB – a small, two-person office – does not have the budget or staff to provide these services.  The likely consequence of the loss of free or reduced cost impasse mediation and arbitration services, in turn, is that there will be unresolved industrial strife across an impactful sector of the New Mexico economy, as well as across various other States' and the National economies.[1]

 c. The second way in which FMCS's operations are implicated under the NM-PEBA is through Sections 19(G) and 20(D), which together impose reciprocal duties on public employers and certified bargaining representatives (e.g., unions) to abide by the provisions of any negotiated labor agreement or CBA.  <u>See</u> NMSA § 10-7E-19(H); and § 10-7E-20(D) (making it a prohibited labor practice to refuse or fail to comply with a CBA or other agreement with the labor-management counterpart).  While impasse disputes deal with formation of a contract, rights or contract grievances assert a violation of the contract itself.  Under Section 17(I) of PEBA (Scope of bargaining), all CBAs "shall include a grievance procedure to be used for the settlement of disputes pertaining to employment terms and conditions and related personnel matters" and "[t]he grievance procedure shall provide for a final and binding determination", i.e., final and binding

---

[1] On or after March 14, 2025, while employed as the NM-PELRB Director, I was contacted by a School District in Illinois seeking emergency mediation services for negotiation impasse, after the Parties had spent five (5) months working with an FMCS mediator whose services suddenly ceased to be available, and the affected Union issued a Notice of Intent to Strike if an agreement could not be reached by their last bargaining session in early April 2025.  (I declined the case but referred them to several former FMCS mediators that had recently lost their FMCS employment as a result of EO 14,238.)

arbitration.  Traditionally, Complaints or PPCs alleging a violation of the CBA will be first grieved under the contract, because of the usually shorter limitation periods in a CBA (usually between 10 and 30 or 45 days) as compared to PEBA (six (6) months).  The PEBA then often defers such claims to the grievance arbitration process, if a PPC is also filed involving the same questions of fact. Now that FMCS has discontinued free or reduced cost mediation services for labor disputes at the State and local levels, more of these matters will have to proceed to arbitration.  However, that process will be frustrated and impaired in turn, if FMCS discontinues or has discontinued the provision of Arbitrator "strike lists" for State and local labor disputants.  Because most CBAs in New Mexico expressly incorporate FMCS strike list or paneling services by name, this will cause immediate harm to and obstruction of non-federal public sector labor relations in New Mexico. While parties to the CBA are generally able and welcome to mutually agree to their own arbitrator (the AFSCME/Albuquerque CBA may be an exception, see Para. 13, infra), that is usually too much to expect as a practical matter when they are already engaged in a labor dispute.  Instead, one party or another will likely be tempted to cite "impossibility", creating another layer of contract dispute and raising questions of bad faith bargaining.  Yet the State or local government disputants will still be without a clear path for resolution if FMCS will not be providing arbitration services in the non-federal public sector, so disputes may likely compound, cascade and/or escalate.

9.    In my practice as an arbitrator from 2010-2025, approximately 90% of my cases involved contract disputes, rather than negotiation impasse; but together they kept me fully or over-employed.  As such, I anticipate a potentially large impact on PELRB operations from the discontinuation of FMCS arbitration (and mediation) services within the non-federal public sector, under Section 19(F) and/or Section 20(D).  As a small Agency with only two Staff members and a limited budget, we at the NM-PELRB will be wholly unprepared in the short and medium term,

to handle a huge influx of contract disputes due to "impossible" provisions calling for or requiring use of FMCS mediation and/or arbitration services.

10.    As a two-person Agency, the NM-PELRB is unable to collect and maintain comprehensive data on the number of collective bargaining agreements that expressly require or provide for the use of FMCS mediation and/or arbitration services. We also are unable to calculate the number of cases that are not brought to the NM-PELRB because they have been resolved at a lower level through the use of FMCS free or reduced cost mediation services, or through use of the FMCS's very cost-effective labor arbitration services. Nonetheless, on information and belief, the percent of public sector disputes in New Mexico resolved in whole or part through free or reduced cost FMCS mediation or arbitration services is most likely near 100%.

11.    We also know that the NM-PELRB has processed 380 Representation Petitions seeking certification of a collective bargaining representative and a collective bargaining unit over the past 20+ years. While many were accretion petitions to add one or more position, they still represent a large volume of CBAs and affected public employers and public employees in New Mexico.

12.    Additionally, NM-PELRB Staff have been informed by an area labor practitioner that many CBAs, public employers, and public employees are impacted in New Mexico by EO 14,238. This is consistent with what I have learned from my Arbitrator colleagues. See Arbitration Info, "Safeguarding Workplace Peace and the Future of the FMCS," available at Safeguarding Workplace Peace and the Future of the FMCS – Arbitration Info (last accessed 4/2/2025) (that "[w]ith a tiny $55 million budget — less than 0.014% of the federal budget –it "delivers extraordinary outsized economic benefits," minimizing labor strife and encouraging industrial peace at a value that exceeds $500 million a year").

13.    This is also consistent with other information that has been made available to the NM-PELRB.

a.    For instance, I am informed by labor-side practitioners that the American Federation of Teachers of New Mexico (AFT-NM) and/or its affiliates alone have twenty-one (21) CBAs with state or local public employers in New Mexico that explicitly mention the FMCS in their grievance-arbitration procedures.  (These include CBAs for the Albuquerque Federation of Classified Professionals (AFCP), the Albuquerque Teachers Federation (ATF), Belen Schools, Carlsbad Schools, Chama Valley Schools, Las Cruces Schools, Cuba Schools, Dulce Schools, Gadsden Schools, Grants Schools, Jemez Mountain Schools, Las Cruces Transportation Federation (LCTF, for bus drivers), McKinley County Federation of Unified School Employees (MCFUSE), Mesa Vista Schools, New Mexico Highlands University (NMHU), Northern New Mexico College, Santa Fe Community College, Socorro Schools, Taos Schools, University of New Mexico (UNM), and Zuni Schools.)

b.    Additional CBAs explicitly referencing FMCS are also available on the NM-PELRB website, including for UNM/United Staff-UNM, Local 6155; Albuquerque/AFSCME Local 624 (Blue Collar); Albuquerque/AFSCME Local 264 (Transit); Albuquerque/Albuquerque Officers' Association, Local 1888; and Albuquerque/AFSCME Local 2962 (Clerical and Technical Employees).  Notably, many of the Albuquerque CBAs – which would come under the jurisdiction of the City of Albuquerque's Labor Management Relocations Board – explicitly state in several places that "[t]he only grievance procedure applicable for this provision is FMCS arbitration."  See https://www.pelrb.nm.gov/collective-bargaining-agreements/.

c.    I am also informed by a labor-side advocate of the following of American Federation of State, County and Municipal Employees (AFSCME) and Communication Workers

8

of America (CWA CBAs explicitly mentioning FMCS in their grievance-arbitration procedures, and the approximate numbers of employees in the bargaining units thereby impacted or harmed: AFSCME/State, 6,000 employees; CWA/State, 2,000 employees; AFSCME Local 624 (Transit)/ABQ, 200 employees; AFSCME Local 2962 (Clerical/Technical), 500 employees; AFSCME Local 3022 (M-Series for Supervisors), 300 employees; AFSCME 2260 (Clerks)/Bernalillo County, 200 employees; AFSCME Local 1536/Bernalillo County, 50 employees; AFSCME Local 1461 (Blue Collar)/Bernalillo County, 150 employees; AFSCME Local 3908 (Blue Collar)/Bernalillo County, 30 employees; AFSCME/Santa Fe, 500 employees; AFSME/NM State University, 760 employees.

d.    Upon information and belief, the following Unions also have CBAs with New Mexico non-federal public employers that explicitly use of FMCS for grievance mediation, although I do not yet know the number of public employees impacted:  New Mexico State Police Association; United Steelworkers (USW); International Brotherhood of Electrical Workers (IBEW); and New Mexico State Fraternal Order of Police Lodge (FOP).

14.    Upon information and belief, FMCS is no longer providing mediation services or arbitration related services for state and local government actors under EO 14,238, which limits the FMCS to its "core" services as mandated under its originating statute, the 1947 Taft-Hartley Act.  Upon information and belief, FMCS's core or mandated services are to provide mediation and arbitration paneling services within the federal sector, and for several large private sector or quasi-governmental industries such as healthcare and the Postal Service.

15.    Based on my communications as the NM-PELRB Executive Director, I am aware that EO 14,238 has already had a significant impact on collective bargaining in New Mexico.  For instance, I am informed by union representatives that they can no longer obtain free or cost reduced

mediation services in a variety of cases that have not yet reached the NM-PELRB or other labor boards.

16.    Additionally, EO 14,238 has had and inevitably will continue to have an effect on labor relations in New Mexico's non-federal public sector and NM-PELRB cases, since FMCS mediation and arbitration services are explicitly cited as a mechanism in Section 18 of PEBA to resolve labor impasse, and are implicated under Sections 17(I) a, 19(H) and 20(D) regarding claims of breach of a CBA.  Moreover, both of these FMCS functions (impasse resolution and contract dispute resolution), help non-federal sector labor disputants in New Mexico to avoid strikes and lockout activities, by providing a clear mechanism for dispute resolution, in the form of final and binding arbitration. The availability of a mechanism to avoid such destructive self-help is very important and cannot be understated.

17.    Based on my communications as a member of the NAA and its Board of Governors, I can also attest that EO 14,238, and its likely impact on collective bargaining around the nation, has been a recurrent subject of concern amongst NAA members, as well as among other labor neutrals and advocates.  According to information relayed by current and former FMCS personnel to me directly and through NAA colleagues, approximately 90% of FMCS staff has or will be cut and all but the District of Columbia office closed.  It is estimated that FMCS will only maintain 10-15 employees in the future, and only at the District of Columbia office.

18.    The implications of this Executive Order in the labor relations community in New Mexico and elsewhere are quite significant.  As noted, FMCS is one the main provider of labor mediation and arbitrator services, particularly in the Western half of the United States.  FMCS's mediation services are provided directly and free of charge or at reduced cost by FMCS Staff Mediators, who are exceedingly competent and well-trained.  For arbitration services, FMCS trains

10

arbitrators; maintains panels of qualified arbitrators for appointment; and empanels Arbitrators upon request of FMCS's labor and management clients, with the payment from the parties of about $150.00. This requires the FMCS to vet and screen the credentials of Arbitrator applying to be on the FMCS panel; admit them to the FMCS panel if qualified, subjecting them to FMCS regulation; and provide panels or "strike lists" of 10-15 arbitrators from which the parties to a labor dispute take turns striking names from the list until they reach one that neither objects to. Although the NM-PELRB does not deal with FMCS mediators or arbitrators directly, FMCS's historic operations are implicated in NM-PELRB operations in multiple important respects, as discussed above.

19.     As a long-standing active member and governing member of the NAA, I am well-aware of the services provided by FMCS in training arbitrators who provide services to New Mexico and other Western States. I myself attended the FMCS Becoming a Labor Arbitrator (BALA) class in or around 2010/2011 and have routinely attended NAA's annual national and regional conferences since then. In my capacity as a member of, NAA Southwest Rockies Region Chair and Vice-Chair (2020-2024), and NAA Governing Board member, I know that FMCS representatives regularly present at NAA conferences and has frequently partnered in programs related to labor relations, such as the NAA-FMCS videoconferencing training put out at the start of the Covid-19 Pandemic that kept labor mediation and arbitration services functioning almost seamlessly during that time.

20.     As a consequence of the foregoing, the NM-PELRB expects to see a large increase in labor disputes that cannot, as a practical matter, be mediated or referred or deferred to arbitration under NMSA§ 10-7E-18 (regarding impasse mediation and arbitration referrals) or NMRA

11.21.3.22 (regarding grievance arbitration deferral).  Notably, the NM-PELRB lacks the staffing and budget to recreate and provide FMCS mediator or arbitration services as described above.

21.    Moreover, I attest that we at the NM-PELRB have already encountered problems with our own case load, related to the loss of free or reduced cost FMCS mediation services for New Mexico public sector disputants.  At present, the NM-PELRB has eight (8) pending cases between the same two parties, several of which are on appeal at State District Court, and one of which is on appeal at the State Courts of Appeal.  At our last hearing on the merits, on January 29, 2025, the parties jointly sought a continuance because neither sides' witnesses had appeared despite being subpoenaed, and the parties hoped to obtain FMCS mediation services to try to settle all their pending cases on a global basis.  Since then, with the discontinuation of FMCS services, the parties' hope for free or affordable FMCS mediation services has withered on the vine.  Sadly, as noted, neither the NM-PELRB nor any similar agency that I am aware of are able and prepared to assist labor disputants in this situation. (Although the State of New Mexico Court of Appeals has a Mediation Program, it is not free or for reduced fee and their mediators generally lack the special substantive knowledge of FMCS mediators.)

22.    FMCS' dispute resolution services outlined above are critical for resolving labor disputes in New Mexico because of their expertise in dispute resolution, their knowledge of the subject matter of labor relations, and their unique skills in negotiations related to collective bargaining. Additionally, free or reduced cost mediation and arbitration services through the FMCS are frequently what allows dispute resolution to take place at all in the labor relations industry.  Labor law is a niche area of specialized law, and it is a notoriously low- or under-paid market compared to such things as commercial mediation and arbitration.  As such, practitioners rely heavily on FMCS's free or reduced-cost services, and the NM-PELRB will not be able to

replace those services in the near or medium term.  (For instance, our budget is already set through June 30, 2026, absent special or emergency funding and was developed upon the assumption that FMCS's free or low-cost mediation and arbitration services would continue to be available to New Mexico non-federal public employers, union, and public employees, as has been the case in the past.)

23.    Another area in which FMCS provides critical free or reduced cost services is through its training and education of mediators, arbitrators, and labor practitioners alike; and its role as a respected federal agency able to rapidly convene major stakeholders to address pressing labor issues of the day.  All stakeholders in labor relations depend on well-trained advocates, mediators and arbitrators alike, and FMCS has been an essential provider of such education, often working with other paneling agencies, labor agencies, and the NAA.  From my prior experience as Deputy Director, I know that FMCS routinely provides – at no or reduced cost – vital training to New Mexico public sector employers, unions and employees on interest based bargaining, and other conflict management topics.  I know from my more recent professional activities that FMCS is instrumental in educating Arbitrators to maintain its Arbitrator panels, such as through the BALA course, which it has administered for several decades with the teaching assistance of NAA members.  I also know, through my NAA activities and involvement, that FMCS plays a vital role in convening stakeholders such as other paneling agencies, the NAA, and the Labor and Employment Relations Association (LERA) to timely address issues of mutual concern, such as due process protocols for videoconferencing during a global pandemic.  Since FMCS arbitration services are provided for or required under Section 18 of PEBA and under most New Mexico CBAs, the quality and regularity of arbitrator training and the convening of necessary multi-lateral work groups are highly relevant to public employers, unions and public employees in New Mexico.

Arbitrator training, in particular, is also relevant to State labor relations agencies such as the NM-PELRB that might consider initiating an Arbitrator listing or paneling service in lieu of or addition to the listing or paneling services previously provided by FMCS. The loss to the labor relations community of FMCS training and educational services and support, and its power to convene stakeholders, are perhaps the hardest impairments to calculate, but on information and belief they are equally significant impairments, particularly in the medium and long term.

24.    If FMCS ceased to function in a meaningful way, the NM-PELRB anticipates an unavoidable increased number of labor disputes before it, and perhaps increased acrimony in those disputes as the hope of low-cost resolution recedes. Because State and local public employers, unions and public employees will no longer be able to comply with the PEBA's requirement to use FMCS for a negotiated grievance/arbitration process, we may also see some disputants resort to industrial self-help such as strike or lockout activity, which can negatively impact our state and local economies. At minimum, we can expect to see increased disorder and disturbance in the operations of the State and its political subdivisions with an increase of unresolved labor disputes. While the NM-PELRB will take any actions in its power and means to "fill the void" and protect New Mexico public interest implicated in PEBA, we will not be able to replace FMCS's free and reduced cost mediation and arbitration services without significant additional resources to expand our programs and staffing.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct. Executed on April 3, 2025, at Albuquerque, New Mexico.

_____
Pilar Vaile

14