# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, et al., *Plaintiffs*, v. DONALD J. TRUMP, et al., *Defendants*. | C.A. No.: |

## **DECLARATION OF MISTY DELGADO**

Pursuant to 28 U.S.C. § 1746, I, Misty Delgado, hereby declare as follows:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I have personal knowledge of all facts stated herein or have knowledge of the matters based on my review of information and records gathered by my staff.

3. I am currently employed as the Chief of Staff for the Rhode Island Department of Children, Youth & Families (DCYF).

4. DCYF is the state child welfare, children's mental health, and juvenile corrections services agency for the State of Rhode Island. DCYF is statutorily responsible for protecting the physical and social well-being and development of Rhode Island's children and families. While this is our statutory responsibility, the care and effort provided by DCYF staff, and our community-based providers goes far beyond what is required. DCYF and its partners strive daily to improve family and child well-being outcomes. Ensuring families thrive and feel supported within their community is a strong value of ours.

5. DCYF seeks to improve family and child well-being by enhancing supports and utilizing alternative response measures as a strategy for preventing child maltreatment. Timely and equitable access to services is critical to supporting vulnerable children and families that are at risk of engaging in our system. DCYF has worked diligently with its partners to create an infrastructure that ensures that families can access the services they need when they need them.

6. As Chief of Staff, I oversaw labor relations between DCYF and its approximately 655 employees, 596 of whom belong to unions. Currently, DCYF has collective bargaining agreements with the following unions: Rhode Island Council 94 AFSCME AFL-CIO, Locals 314, 2876, 2392, Rhode Island Alliance of Social Service Employees, SEIU Local 580, Rhode Island Brotherhood of Correctional Officers Professional Unit, National Association of Government,

2

Local 79, - Howard Union of Teachers American Federation of Teachers, Local 1171, and the Rhode Island Probation and Parole Association. Those agreements include provisions referring disputes to mediation through FMCS. *See* Attachment A.

7. Over the past seventeen months, I have been involved in numerous negotiations with DCYF employees involving contract disputes, grievances, collective bargaining agreements, and other personnel matters.

8. I submit this declaration in connection with Executive Order 14,238, "Continuing the Reduction of the Federal Bureaucracy," which directed seven federal agencies, including the Federal Mediation and Conciliation Service (FMCS), to eliminate any non-statutory components and functions to the maximum extent consistent with applicable law, and to reduce the performance of any statutory functions and associate personnel to the minimum presence and function required by law.

9. FMCS offers experienced mediators, training, and facilitation services to employers and unions nationwide, fostering collaborative labor-management relationships, and preventing costly disruptions in production, services, and supply chains, ensuring economic stability and growth.

10. For example, FMCS provided a mediator to help resolve a grievance between the Department of Children, Youth and Families and a union in Fall 2024. The dispute involved determining whether there was a violation of the CBA by reassigning an employee from one division to another to handle critical event reviews. Had the dispute continued, the State faced a serious disruption to critical state services such as monitoring and reviewing of critical events including but not limited to near-fatalities and fatalities of children. Instead, however, the crisis was averted through FMCS's mediation—which was provided at no cost.

11. FMCS provided a skilled mediator who was knowledgeable and objective. Through their services, a resolution was reached and a strike averted. If the matter had not been resolved through FMCS, DCYF's ability to provide its most vulnerable children with the security and stability they require could have been crippled for an indefinite period of time.

12. In my opinion, FMCS's dispute resolution services outlined above are critical for resolving labor disputes in Rhode Island because the agency provides experienced, third-party mediators from outside the State to resolve entrenched conflicts where the State is a party.

13. If FMCS ceased to function in a meaningful way, it is my opinion that the State would suffer from prolonged labor disputes that could disrupt the provision of essential state services, including our child welfare support services. If the State were forced to replace FMCS services with private mediators, the estimated cost to the State could amount to hundreds of thousands of dollars per year. Those costs would rise even higher if the State were pulled into costly litigation, which could result in a major judgment against the State.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct. Executed on April 3, 2025, at Providence, Rhode Island.

_____
Misty Delgado, Chief of Staff DCYF