# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, *et al.*, | |
| Plaintiffs, | |
| v. | No. 25-cv-00128 |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| Defendants. | |

**DEFENDANTS' MOTION FOR A STAY PENDING APPEAL**

## INTRODUCTION

The Court's preliminary injunction order enjoins the Agency Defendants from "implementing Section 2 of the Executive Order 14238, 'Continuing the Reduction of the Federal Bureaucracy'" ("Executive Order") and directs Defendants "to reverse any policies, memoranda, directives, or actions" taken to implement the Executive Order at IMLS, MBDA, and FMCS.  ECF No. 60 ¶¶ 1–2.  The Executive Order and Defendants' subsequent implementation actions affirm that, absent further congressional action, the Agency Defendants will continue to perform mandatory statutory duties.  But the injunction imposes restrictions on Executive Branch agencies akin to judicial receivership, as compliance requires the Agency Defendants to reinstate personnel against their judgment, expend non-statutorily required resources, and restart non-statutorily required programs that are directly contrary to the Agency Defendants' preferred policies.  Moreover, Defendants respectfully disagree with the Court's analysis of the Supreme Court's holding in *California*, and submit that a stay pending the First Circuit's review of that analysis and the Court's jurisdiction is warranted.  Accordingly, Defendants request a stay pending their appeal of this Court's preliminary injunction order.[1]

## ARGUMENT

In considering a stay pending appeal, the Court must examine "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Each of the factors strongly counsels in favor of a prompt stay.

---

[1] Defendants recognize that, in conjunction with its preliminary injunction ruling, this Court denied the request for a stay to allow the Solicitor General to determine whether to appeal and for a stay pending any appeal in the event that the Court granted injunctive relief.  *See* ECF No. 57 at 49.  Defendants now move for a stay pending appeal, in part, due to Federal Rule of Appellate Procedure 8(a)(1)'s requirement.

**I. Defendants are Likely to Succeed on Appeal Because the Preliminary Injunction Sweeps Beyond What is Necessary.**

A preliminary injunction is "an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). Constitutional and equitable principles require that such extraordinary relief be no broader than necessary. *Cf. Gill v. Whitford*, 585 U.S. 48, 73 (2018); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Defendants submit that the relief awarded in this case is overbroad and that this Court lacks jurisdiction to control IMLS, MBDA, and FMCS's personnel actions and to require continued payment on IMLS and MBDA's grants.

The injunction in this case appears to reflect a problematic premise: that the Agency Defendants, as they existed on March 14, 2025, should be the benchmark for minimum statutory compliance, and that a departure from that model carries a taint of illegality. Indeed, the Court predicated its award of preliminary relief on the belief that the Agency Defendants were on the brink of irreversible closure and that preliminary relief was necessary to ensure Defendants' performance of statutory duties. But instead of entering an injunction tailored to only the mandatory statutory functions articulated in the Agency Defendants' organic statutes, the Court imposed a sweeping order that is not grounded in statutory requirements. The injunction—which requires the Agency Defendants "to reverse any policies, memoranda, directives, or actions" intended to implement the Executive Order, ECF No. 60 ¶ 2—blocks standard workforce decision-making discretion, resource allocation decision-making discretion, and discretion to issue administrative directives that the Agency Defendants, like all agencies, ought to retain.

Although the injunction permits personnel decisions unrelated to the Executive Order and, more broadly, authorizes the Agency Defendants to take "actions that would improve Agency efficiency," the order nonetheless requires the Agency Defendants to reinstate *all* personnel that were involuntarily placed on administrative leave or terminated as a result of the Executive Order. *See* ECF No. 60 ¶¶ 3–4. The requirement to reinstate all employees places a tremendous administrative burden on agencies, requiring the Agency Defendants to restore positions they have determined are not necessary to fulfill statutory minimums. This burden is

2

particularly acute in light of an uncertain appellate outcome that could uphold the agencies' staffing decisions. *See* Sonderling Decl. ¶ 14, 16 ("Adding 57 staff on an ongoing basis is a burden for the agency and will require additional funding under the current CR. The extra, unrecoverable costs are approximately $900,000 per month." And "IMLS was in the process of moving to a more compact footprint of leased space, which would have saved approximately $1.3 million per year."); Mitchell Decl. ¶ 19 ("The terms of the preliminary injunction require the Agency to bring back the approximately 27 remaining MBDA employees, whose positions are not mandated by statute. As such, the Agency will sustain substantial salary costs, as well as ancillary costs, including benefits, for these positions, which would not been incurred but for the preliminary injunction and will not be recoverable."); Goldstein Decl. ¶ 9 ("If the preliminary injunction is not stayed, the cost associated with the 120 salaries for returning employees, including ancillary benefits is $8.4 million. In addition to those costs, employees returning to FMCS Headquarters will need to be reestablished into the SmartBenefits Commuter Transit Benefits program, which will take up to 60 days and cost approximately $40,000. These costs would not be recoverable.").

  Rather than permit the Agency Defendants to manage their own workforce—a role soundly committed to agency discretion—the injunction requires the Agency Defendants to "take all necessary steps to restore all IMLS, MBDA, and FMCS employees and personal service contractors." ECF No. 60 ¶ 4. In other words, the injunction substitutes the Agencies' judgment for the Court's in terms of personnel decisions. But the Court has no power to make such a substitution and declare that the Agency Defendants must reinstate and employ these particular employees and contractors—especially when the Agency Defendants have already made contrary personnel decisions with respect to these particular employees and contractors. *See* Sonderling Decl. ¶ 13 ("Returning [employees] to the office promises to present, at best, an awkward situation and, at worst, a toxic work environment."); Mitchell Decl. ¶ 23 ("Considering the recent terminations and the likely future direction of the Agency, requiring the Agency to re-establish the workforce could significantly compromise the overall environment, well-being, and

3

personal safety of Department employees.").

  Moreover, the injunction severely impedes IMLS and MBDA's discretion in negotiating, entering into, and terminating contracts. *See* ECF No. 60 ¶ 5. As Defendants have argued, these claims arise under the Tucker Act, over which the Court of Federal Claims maintains exclusive jurisdiction. *See* Defs.' Opp'n Prelim. Inj., ECF No. 41, at 14–18. The injunction requires IMLS and MBDA to exist as they were prior to March 14, 2025 and to restore Plaintiffs' grants. The injunction, therefore, prohibits IMLS and MBDA from engaging in contract negotiations, oversteps IMLS and MBDA's broad discretion in setting terms of the grant agreements, and prevents IMLS and MBDA from finalizing any subsequent contract termination even if IMLS and MBDA determine that the contracts are unnecessary to fulfill statutory functions. Indeed, agencies routinely enter and terminate contracts based on their needs and priorities.

  Although the Court concluded that *California* was not dispositive, ECF No. 57 at 14–17, Defendants respectfully disagree with that conclusion. As Defendants explained, Plaintiffs challenged the termination of their grant agreements and sought relief requiring disbursement of the funds. Such relief arises out of the grantee agreements (rather than statutory or Constitutional provisions, as the Court reasoned) because any obligation for the Government to disburse funds is governed by the express contract entered into between the grantee and the United States. *See* Defs.' Opp'n Prelim. Inj., ECF No. 41, at 14. Congress has made clear that any funds disbursed to grantees like Plaintiffs are paid solely pursuant to grant agreements, *i.e.* contracts, between the agencies and the grantees. *See* 20 U.S.C. § 9108(c) ("The Director [of the IMLS] is authorized to enter into grants, contracts, cooperative agreements, and other arrangements with Federal agencies, public and private organizations, and other entities with expertise the Director determines appropriate . . . ."); 15 U.S.C. § 9524(c)(1) ("The amount of financial assistance provided by the Under Secretary under an MBDA Business Center agreement shall be not less than $250,000 for the term of the agreement."). In analogous circumstances, the Supreme Court held that "the Government [was] likely to succeed in showing that the District Court lacked jurisdiction to order the payment of money under the

4

[Administrative Procedure Act]" because the Tucker Act vested exclusive jurisdiction over such actions in the Court of Federal Claims. *Department of Education v. California*, 145 S. Ct. 968 (2025). This guidance is dispositive of Plaintiffs' grant-based claims, which at their core involve a challenge to the Government's termination of federal grants. A stay is, therefore, warranted in this case. *See, e.g.*, *Am. Ass'n of Colleges for Teacher Ed., et al. v. McMahon*, No. 25-cv-1281 (4th Cir. Apr. 10, 2025) (granting the Government's motion to stay a preliminary injunction in light of *California*).

## II. The Remaining Factors Favor A Stay.

The equitable factors likewise weigh in Defendants' favor, and the public interest and balance of equities factors merge where, as here, an injunction is sought against the government. *Nken*, 556 U.S. at 435. As Defendants have explained, the injunction prevents the Agency Defendants from ensuring taxpayer money is appropriately stewarded, as intended by the statutory scheme that Congress provided. Without such a protective measure, and particularly in the absence of a bond, there may be no way to recover the funds lost to United States taxpayers if the Court were later to find that Defendants were wrongfully enjoined. Defendants, therefore, request that the Court stay the Government's obligations to disburse funds pending review on appeal. *California*, 145 S. Ct. at 968–69. Indeed, a stay is particularly prudent because a bond was not imposed in this case. *See id.* at 969.

Although the Court concluded that Plaintiffs were likely to suffer irreparable harm absent entry of a preliminary injunction, the harms that Plaintiffs purport to suffer are neither certain nor irreparable. By contrast, in addition to unrecoverable administrative expenses, "[c]ompliance with the injunction during the appeal will cost IMLS approximately $78.5 million in additional grant funds that are counter to the administration's priorities and that cannot be recovered even if the Government prevails." Sonderling Decl. ¶ 18. Similarly, MBDA is expected to expend "at least $27 million in additional grant funds" that would not be recoverable if Defendants prevail on appeal. Mitchell Decl. ¶ 10, 13. And FMCS will incur a number of unrecoverable, administrative expenses, including $8.4 million in ancillary benefits, $5,000 for equipment,

5

$3,400 for credentials, $40,000 in commuter benefits, $3,000 per month in internet reimbursement, and $7,000 per month for cellphones. Goldstein Decl. ¶¶ 8–9, 12, 15.

The Court has awarded preliminary relief for the purpose of preserving the Agency Defendants' existence and restoring the Agency Defendants' pre-Executive Order status. However, Executive Order directs the agencies to operate at their statutory minimum, and the Agency Defendants will continue to fulfill those statutory obligations. *See* Sonderling Decl. ¶ 6; Mitchell Decl. ¶ 4; Goldstein Decl. ¶ 3. In the interim, the employees placed on administrative leave will retain their full pay and benefits, and the agencies remain able reinstate employees as needed.

## CONCLUSION

For the foregoing reasons, this Court should enter a stay pending appeal.

Dated: May 19, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

/s/ *Abigail Stout*
ABIGAIL STOUT
(DC Bar No. 90009415)
*Counsel*
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 514-2000
Email: Abigail.Stout@usdoj.gov

*/s/ Heidy L. Gonzalez*
JULIA A. HEIMAN (D.C. Bar No. 986228)
HEIDY L. GONZALEZ (FL Bar No. 1025003)
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC  20005
Tel. (202) 598-7409
heidy.gonzalez@usdoj.gov

*Attorneys for Defendants*
