IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | No. 25-cv-00128 |

## DECLARATION OF KEITH E. SONDERLING

I, Keith E. Sonderling, declare as follows:

1. The information provided below is based upon my personal knowledge and experience, and information furnished to me in my official capacity.

2. I currently serve as the Deputy Secretary of Labor. I was confirmed on March 12, 2025.

3. On March 18, 2025, President Donald J. Trump appointed me as the Acting Director of the Institute of Museum and Library Services (IMLS).

4. IMLS is an independent federal agency that supports libraries, archives, and museums in every State and territory.

5. On March 14, 2025, President Trump issued Executive Order (EO) 14238, Continuing the Reduction of the Federal Bureaucracy, which directed that the "non-statutory components and functions" of IMLS be eliminated "to the maximum extent consistent with applicable law," and that IMLS "reduce the performance of [its] statutory functions and associated personnel to the minimum presence and function required by law."

6. Following the President's directive, IMLS reduced the performance of its statutory

functions and associated personnel to the minimum needed to carry out its statutory duties.

7. To accomplish its work, IMLS issues grants through its Office of Library Services and its Office of Museum Services.

8. The largest program, Grants to States, provides funds through the Library Services and Technology Act to all 50 states and U.S. territories, and accounts for approximately $180 million of the agency's budget.

9. As part of the initial compliance with EO 14238, three Grants to States FY24 awards were terminated on April 1, 2025. However, upon further review, I first authorized back payments to these grants on May 1, 2025, and then fully reinstated them on May 5, 2025. In the meantime, I had authorized partial FY25 grant payments to all state grantees, which were received on April 23, 2025, and May 6, 2025. The payments are partial only because IMLS has not yet received its FY25 apportionment from the Office of Management and Budget. Once that apportionment is received, IMLS will pay out the remainder of the FY25 awards. Thus, the Grants to States program was fully intact, independent of and ahead of the entry of the Court's May 5, 2025, Preliminary Injunction Order.

10. The remaining grants distributed by IMLS are competitive. While approximately 1,200 grants were terminated pursuant to EO 14238, approximately 100 grants remained. As a result, before the issuance of the Preliminary Injunction Order, at least one competitive grant remained per statutory program, with plans to award more later this summer.

11. IMLS has been working diligently to comply with the Preliminary Injunction Order; however, compliance comes with challenges and associated costs.

12. In compliance with the Preliminary Injunction Order, IMLS notified employees that it would implement an orderly, staggered return to work, with all non-remote employees expected to be back in the office by May 27th. The American Federation of Government Employees, the representative of IMLS bargaining unit employees, has indicated that it objects to the return-to-work notice and will likely engage in bargaining over the Agency's implementation of the Court's Order. IMLS will engage in good faith with any negotiations with the intent of reaching a resolution complying with the Preliminary Injunction; however, more time is needed to address the union's concerns and finalize the negotiations. Such negotiations will naturally add time and expense to the efforts to return employees to work.

13. Upon information and belief, many employees who will be returning to the office were actively involved in assisting the plaintiffs in related litigation in the District of Columbia, providing information to the press, and publicly disparaging those employees who remained. Returning them to the office promises to present, at best, an awkward situation and, at worst, a toxic work environment. Furthermore, given their active support of the plaintiffs, it is unclear whether those employees will be fully prepared to support the administration's priorities for IMLS's grant programs.

14. IMLS's apportionment request under the FY25 Continuing Resolution (CR) was based on compliance with EO 14238 and a minimal staffing posture that ensured the full measure of Grants to States and all statutorily required programs were serviced at a level compliant with the President's direction. Adding 57 staff on an ongoing basis is a burden for the agency and will require additional funding under the current CR. The extra, unrecoverable costs are approximately $900,000 per month.

15. While there will be sufficient staff to handle the initial additional duties of the reinstatements, once the initial work is completed, it will leave more employees than are needed to handle the ongoing oversight and eventual closeout of those grants. Although every effort will be made to find work to occupy those employees, bringing back all of the staff while almost half of the grants will remain terminated will result in the agency being overstaffed, leading to staffing inefficiencies and additional costs.

16. Additionally, IMLS was in the process of moving to a more compact footprint of leased space, which would have saved approximately $1.3 million per year. Indeed, the General Services Administration had already terminated IMLS's occupancy agreement and had moved ahead with other plans for the space. Complying with the Preliminary Injunction Order will force GSA to rescind that termination, make alternative arrangements for the intended use of the space, prevent two agencies from efficiently managing their space needs, and result in taxpayers incurring costs that would otherwise have been avoided.

17. The Order requires IMLS to reinstate contracts that were in the process of being terminated for convenience. The agency will incur additional costs of $4 to $ 5 million to do so, excluding the separate termination preparation costs incurred by the contractors and the costs associated with continuing contracts deemed unnecessary for the efficient operation of the agency.

18. Finally, the Order requires the time, ongoing effort, and cost to reinstate at least 755 competitive grants in the Plaintiff States. Compliance with the injunction during the appeal will cost IMLS approximately $78.5 million in additional grant funds that are counter to the administration's priorities and that cannot be recovered even if the Government prevails.

19. All costs associated with grants, contracts, salaries, and other expenses exceeding those necessary to maintain IMLS's statutorily required functions will be unrecoverable. As such, IMLS will suffer irreparable harm if the injunction is not stayed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of May 2025.

_____
KEITH E. SONDERLING