IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STATE OF RHODE ISLAND, *et al.*,

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as the President of the United States, *et al.*,

Defendants.

No. 1:25-cv-00128

**DECLARATION OF KELLY MITCHELL**

Pursuant to 28 U.S.C. § 1746, I, Kelly Mitchell, declare as follows:

1. I am the Deputy Chief of Staff for the Minority Business Development Agency (MBDA or "the Agency") within the U.S. Department of Commerce (Commerce) headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the Department of Commerce, or on information I have gained in the course of performing my official duties.

2. I have served in this position since March 24, 2025. In my role at MBDA, I am responsible for providing direct support to the Under Secretary of MBDA in the administration of the overall operations of MBDA, assuring that MBDA organizations comply with the policy directives and objectives of the Administration and resolving policy and program operation issues, and otherwise providing strategic advice and guidance on a wide range of substantive and operational policy and organizational issues.

3. Following the issuance of Executive Order 14,238, which directed that the "non-statutory components and functions" of several agencies, including MBDA, be eliminated, the Department conducted a reasoned analysis of how to maintain operations consistent with the statutory requirements.

4. As discussed further below, even prior to the preliminary injunction, MBDA retained sufficient staff to fulfill its statutorily-mandated duties, including the operation of the Business Center Program and the maintenance of the Information Clearinghouse required under 15 U.S.C. § 9513(b).

5. If the injunction is not stayed pending appeal, the Agency and the Department will suffer irreparable harm in the form of unrecoverable costs for grants, contracts, employee salaries, and other administrative expenses, well above and beyond what would be required for the statutorily-required functions MBDA is already fulfilling. As set out in greater detail below, a stay is also squarely in the public interest because, absent a stay, substantial taxpayer dollars will be wasted on projects that no longer align with the administration's priorities, are not statutorily required, and may not ultimately be completed.

**Federal Financial Assistance Awards (Grants)**

6. If the preliminary injunction is not stayed pending appeal, MBDA will expend substantial funds on the payment of federal financial assistance awards that will not be recoverable if the Agency ultimately prevails on appeal.

7. The Minority Business Development Act of 2021 (the Act) requires MBDA to provide Business Center Program services with nationwide coverage. *See* 15 U.S.C. § 9523. While MBDA has in recent years provided its services through multiple business centers across the country, the Act does not require a specific minimum number of business centers that must

operate.  *See id.*  The statutory requirements of the Act can be satisfied through the operation of a single business center with a nationwide virtual presence.

8. On May 13, 2025, when the preliminary injunction was entered, MBDA had not terminated, and had no plans to terminate, the award to the MBDA Business Center of the Commonwealth of Virginia (recipient Capital Region Minority Supplier Development Council Inc.).[1]  In fact, the Agency was working, and continues to work, on an amendment to the terms of the award to the Virginia Business Center to enable that center to provide nationwide coverage virtually.  Continued disbursement of grant funds to other business centers that are not required by the Act would hinder MBDA's efforts to improve Agency efficiency by redirecting its focus to a single virtual business center that can better and more consistently serve the needs of the public.

9. In addition to the Business Center Program, in the past MBDA has, in its discretion, awarded funds through other grant programs that are not mandated by statute, such as the Capital Readiness Program and certain specialty center programs.  Continued disbursement of funds through these programs, which are not mandated by statute, would similarly hinder MBDA's efforts to improve Agency efficiency to better serve the public interest.

10. In total, if MBDA must comply with the terms of the Court's order during the pendency of the appeal, the Agency will expend at least $27 million in additional grant funds that will not be recouped if the Agency and Department prevail in litigation.

11. If grant recipients are given renewed access to funds under programs that would have otherwise been terminated, it is foreseeable that these recipients may attempt to draw down grant funds to the limit of their abilities and accelerate work.  This would mean that the money

---

[1] The Virginia Business Center originally received a copy of the April 17, 2025 termination letter sent to business centers; however, that letter was sent in error.  A letter rescinding the termination was sent on May 7, 2025.

expended on allowable costs cannot be recovered, even if the Agency and Department ultimately prevail in litigation and terminate the grant going forward. *See* 2 C.F.R. § 200.305.

12. Under 2 C.F.R. § 200.346, federal funds paid to a grant recipient in excess of the amount that the recipient is determined to be entitled to under the award constitute a debt to the federal government. However, even if the federal government determines that any payouts are in excess of the recipient's entitlement, debt collection procedures have significant associated administrative and legal costs, and often do not result in collection of the full amount of the debt. The additional costs associated with recovery efforts would likely negate any recovery amounts.

13. In addition to the unrecoverable disbursements, MBDA will incur unrecoverable administrative costs associated with grants management.

14. At the time that the preliminary injunction was issued, the National Oceanic and Atmospheric Administration (NOAA) Grants Management Division (GMD) continued to provide grants management services, including support and oversight, for MBDA awards. This arrangement is pursuant to an Interagency Agreement between MBDA and NOAA that long pre-dated Executive Order 14,238. Such an arrangement is common within the Department for the management of grants issued by its smaller bureaus. If the preliminary injunction is not stayed pending appeal, MBDA will incur at least $750,000 in additional expenses for services provided by NOAA GMD to manage awards that are not statutorily-required and would otherwise be terminated.

15. At the time that the preliminary injunction was issued, MBDA's contractor, Corner Alliance, also continued to provide support services, including grants administrative support. If the preliminary injunction is not stayed pending appeal, the Agency will incur at least $500,000 in

additional expenses for grants administrative support services for awards that are not statutorily-required and would otherwise be terminated.

16. If MBDA prevails in its appeal of the preliminary injunction, the substantial additional expenses incurred for grants management services and grants management support services will constitute wasted public funds.

**Personnel**

17. If the preliminary injunction is not stayed pending appeal, MBDA will expend substantial personnel related efforts and funds that will not be recoverable if the Agency prevails, and as such, constitute wasted public funds.

18. Only two positions within MBDA are statutorily mandated. These statutorily mandated positions are currently filled and being performed by MBDA employees. MBDA also retained a Deputy Chief of Staff position, which I am currently performing as an MBDA employee.

19. The terms of the preliminary injunction require the Agency to bring back the approximately 27 remaining MBDA employees, whose positions are not mandated by statute. As such, the Agency will sustain substantial salary costs, as well as ancillary costs, including benefits, for these positions, which would not been incurred but for the preliminary injunction and will not be recoverable.

20. Similarly, the Agency is now required to expend resources supporting these 27 non-statutorily mandated positions, by allocating to them Department support services, such as information technology, human resources, administrative, maintenance, and financial services. The costs associated with these resources would not be incurred but for the preliminary injunction and will also not be recoverable.

21. Furthermore, all MBDA employees who were placed on administrative leave, and subsequently received Reduction-in-Force notices, returned their equipment—*i.e.*, government issued laptops, phones, and credentials—to the Agency. If the preliminary injunction is not stayed pending appeal, the Agency will be required to re-issue the equipment until a decision is rendered on the appeal. Initially, this requires the Agency to assign a Department employee to escort the returning MBDA employees throughout the office, until their badges are re-issued and re-credentialed, and to re-issue equipment.

22. Likewise, the office space which once housed MBDA has since been reallocated and is no longer available. As such, if the preliminary injunction is not stayed, the Agency will have to allocate new space to MBDA.

23. The Federal Government has a fundamental duty to provide a safe and secure workplace for its employees. Considering the recent terminations and the likely future direction of the Agency, requiring the Agency to re-establish the workforce could significantly compromise the overall environment, well-being, and personal safety of Department employees.

24. Reinstating MBDA employees while the litigation is ongoing will also create inefficiencies and disrupt the current workflow of the Agency.

25. The employees serving in MBDA's two statutorily mandated positions, the Under Secretary and Director of Business Centers, along with myself as Deputy Chief of Staff, are fulfilling MBDA's statutorily mandated functions, with the assistance of MBDA's contractor, Corner Alliance.

26. Without a stay of the preliminary injunction, the Agency would be required to restart non-statutorily mandated work, which does not align with the Administration's current priorities or serve the best interests of the American people. MBDA would be required to divert

attention from current Administration priorities to non-statutorily mandated functions, creating inefficiencies by working on matters that may not ultimately be completed.

27. In addition, if the preliminary injunction is not stayed, the Agency will be faced with significant labor obligations.

28. The Agency and the National Federation of Federal Employees (NFFE or Union), the exclusive representative of MBDA bargaining unit employees, entered into a collective bargaining agreement (CBA), which imposed certain requirements and obligations upon the Agency. Article 16, Section 16.02, of the CBA requires the Agency to hold a minimum of one progress review at the mid-point of the performance period. The mid-point of the performance period occurred while the MBDA employees were on administrative leave. Accordingly, if a stay is not granted, the Agency will be required to hold progress reviews in order to comply with the CBA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 19, 2025

                                        Kelly Mitchell
                                        Deputy Chief of Staff
                                        Minority Business Development Agency