# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND; STATE OF NEW YORK; STATE OF HAWAIʻI; STATE OF ARIZONA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN; | Case No.: 1:25-cv-128 |

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; INSTITUTE OF MUSEUM AND LIBRARY SERVICES; KEITH E. SONDERLING, in his official capacity as Acting Director of the Institute of Museum and Library Services; MINORITY BUSINESS AND DEVELOPMENT AGENCY; MADIHA D. LATIF, in her official capacity as Deputy Under Secretary of Commerce for Minority Business Development; HOWARD LUTNICK, in his official capacity as Secretary of Commerce; FEDERAL MEDIATION AND CONCILIATION SERVICE; GREGORY GOLDSTEIN, in his official capacity as Acting Director of the Federal Mediation and Conciliation Service; OFFICE OF MANAGEMENT AND BUDGET; RUSSELL T. VOUGHT, in his official capacity as Director of the Office of Management and Budget;

Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A STAY PENDING APPEAL

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

ARGUMENT ...................................................................................................... 5

    DEFENDANTS ARE NOT ENTITLED TO A STAY PENDING APPEAL ........................................ 5

        A.    Defendants Have Not Made a Strong Showing That They Will Succeed on the Merits. ............................................. 5

                1.    Defendants' Arguments About the Scope of the Preliminary Injunction Are Both Waived and Meritless. ............................... 6

                2.    Defendants' Arguments About This Court's Jurisdiction Are Meritless.............. 9

        B.    Defendants Have Not Shown Irreparable Injury. ............................................. 12

        C.    The Remaining Factors Weigh Against a Stay. ............................................. 15

CONCLUSION .................................................................................................. 16

## INTRODUCTION

Defendants are not entitled to the "extraordinary remedy," *Nken v. Holder*, 556 U.S. 418, 428 (2009), of a stay pending appeal. As this Court held in granting plaintiffs' motion for a preliminary injunction, plaintiffs demonstrated a strong likelihood of success on their claims that defendants violated the Administrative Procedure Act (APA) and the Constitution by taking sweeping actions to implement an executive order that gutted three federal agencies established by Congress.[1] In addition, this Court carefully considered input from all parties in crafting the text of the preliminary injunction order, which is specifically tailored to undo defendants' unlawful actions and to prevent defendants from attempting to unlawfully implement the executive order and dismantle the agencies again during the pendency of this case.

Defendants' six-page stay motion fails to demonstrate any of the factors warranting a stay pending appeal under binding precedent. First, defendants offer no argument that they are likely to succeed on the merits of an appeal from the entire order. Instead, defendants challenge the language of the preliminary injunction order with respect to personnel and programming and argue that the Court lacked jurisdiction over plaintiffs' claims insofar as they relate to grants, repeating the theory that the attempted gutting of the three agencies amounts to a contract dispute.

---

[1] Plaintiffs are the States of Arizona, California, Colorado, Connecticut, Delaware, Hawaiʻi, Illinois, Maine, Maryland, Massachusetts, the People of the State of Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Washington, and Wisconsin. Defendants are the Institute of Museum and Library Services (IMLS), the Minority Business and Development Agency (MBDA), the Federal Mediation and Conciliation Service (FMCS), the Office of Management and Budget (OMB), Keith E. Sonderling, in his official capacity as Acting Director of IMLS, Madiha D. Latif, in her official capacity as Deputy Under Secretary of Commerce for Minority Business Development, Howard Lutnick, in his official capacity as Secretary of Commerce, Gregory Goldstein, in his official capacity as Acting Director of FMCS, Russell T. Vought, in his official capacity as Director of the OMB, and Donald J. Trump, in his official capacity as President of the United States.

Defendants are wrong on both of these points, and in any event, fail to explain why these discrete complaints justify a stay of the preliminary injunction in its entirety.

Second, defendants seek to introduce for the first time evidence from agency officials purporting to quantify the costs of compliance with the preliminary injunction. Among other things, defendants complain about the fiscal and management challenges of reinstating employees that they previously tried to fire. But defendants are not allowed to violate the law and then complain that the cost of undoing those violations constitutes irreparable harm.

Finally, defendants do not meaningfully dispute the irreparable harms that *plaintiffs* had already experienced and would continue to experience absent injunctive relief. Accordingly, defendants' motion should be denied.

## BACKGROUND

In this action, plaintiffs challenge defendants' actions to dismantle three federal agencies created by Congress, vested by Congress with enumerated responsibilities, and appropriated over $400 million in funds: the Institute of Museum and Library Services (IMLS), the Minority Business and Development Agency (MBDA), and the Federal Mediation and Conciliation Service (FMCS). *See* Mem. & Order at 6-7 (May 6, 2025), ECF No. 57. In March 2025, defendants gutted the programs, operations, and staff of these agencies within weeks of an executive order directing such action, without congressional approval or any reasoned explanation. *See* Exec. Order No. 14,238, Continuing the Reduction of the Federal Bureaucracy, § 2(a) (Mar. 14, 2025), 90 Fed. Reg. 13043, 13043 ("*Reduction* EO").

In April 2025, plaintiffs filed this complaint and moved for a preliminary injunction to halt and reverse the dismantling of IMLS, MBDA, and FMCS. Request for Emergency TRO (Apr. 4, 2025), ECF No. 3. The motion was supported by dozens of declarations explaining the steps

2

defendants have taken to dismantle the agencies and cataloguing the severe harms plaintiffs had already experienced and would continue to experience absent injunctive relief, including the ongoing or imminent loss of millions of dollars of critical funding, the termination of trusted mediation services critical to resolving public-sector labor disputes, and disruptions in state library services to vulnerable populations such as the elderly, veterans, and non-English speakers. *See* ECF No. 3 through 3-45; *see also* ECF Nos. 35 through 35-9, 39, 44 through 44-3, 45 through 45-6. Defendants submitted no evidence rebutting plaintiffs' showing and did not contest the merits of several of plaintiffs' claims. Instead, they raised a variety of arguments about jurisdiction and the scope of relief under the APA. *See* Defs.' Opp'n to Pls.' Mot. for Emergency TRO (Apr. 14, 2025), ECF No. 41 (Defs.' Opp'n).

After briefing and oral argument, this Court concluded that plaintiffs were entitled to a preliminary injunction to prevent defendants from dismantling IMLS, MBDA, and FMCS. *See* Mem. & Order. The Court held that plaintiffs had standing (*see id.* at 11), that the claims were ripe for judicial review (*id.* at 12-14), and that the Court had jurisdiction over plaintiffs' claims, including where those claims implicated grant disbursements (*id.* at 14-18) and mass reductions in force (*id.* at 18-21). On the merits, the Court concluded that defendants' actions could be challenged under the APA (*id.* at 21-26), were likely arbitrary and capricious insofar as defendants provided no reasoned explanation (*id.* at 26-31), were likely contrary to law insofar as defendants acted contrary to the statutes governing the subject agencies and appropriations (*id.* at 31-39), and were likely unconstitutional (*id.* at 39-40). The Court also found that plaintiffs established irreparable harm (*id.* at 41-45) and that the balance of the equities and public interest weighed in favor of injunctive relief (*id.* at 46-47).

Seven days later, after incorporating all of defendants' proposed revisions, the Court entered a preliminary injunction order directing defendants to, among other things, (i) "take all necessary steps to reverse any policies, memoranda, directives, or actions" previously taken to implement the *Reduction* EO with respect to these three agencies; (ii) restore employees and personal service contractors who were involuntarily placed on leave or terminated due to implementation of the *Reduction* EO; and (iii) resume processing, disbursement, and payment of funds to recipients in plaintiff States that were stalled or terminated in reliance on the *Reduction* EO. *See* Prelim. Inj. at 3-4 (May 13, 2025), ECF No. 60. Pursuant to language specifically requested by defendants, the preliminary injunction does not apply to "personnel decisions that are not related to or motivated by" the *Reduction* EO, and the order expressly permits defendants to "tak[e] actions that would improve Agency efficiency or reduce the size or scope of the Agenc[ies]," so long as they "provide[] a reasoned explanation for such action" and such "action will not prevent the Agenc[ies] . . . from fulfilling any of their statutory obligations." *Id.* at 3. By its terms, the preliminary injunction also does not affect funding actions based on "non-compliances with applicable grant or contract terms." *Id.* at 4.

Defendants filed this motion for a stay pending appeal on the evening of May 19, 2025, and attached three declarations attesting to new information that was not presented to this Court during briefing on the preliminary injunction. *See* Mot. (May 19, 2025), ECF No. 63. The next morning, the Court ordered plaintiffs to respond by May 27 and defendants to reply by May 30. *See* Text Order (May 20, 2025).

Defendants nevertheless moved for a stay pending appeal (and an immediate administrative stay pending resolution of the stay motion) in the First Circuit the following day, before this Court had an opportunity to resolve this motion. Defendants' motion to the First Circuit challenges many

4

more aspects of this Court's decision and preliminary injunction order than this motion does.[2] *See* Mot. for Stay Pending Appeal & Administrative Stay (May 21, 2025), *Rhode Island v. Trump,* No. 25-1477, 1st Cir. ECF No. 00118288488.

## ARGUMENT

### DEFENDANTS ARE NOT ENTITLED TO A STAY PENDING APPEAL

Defendants are not entitled to a stay of the preliminary injunction order. In evaluating a motion to stay pending appeal, this Court must consider four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 426. As explained below, each factor weighs heavily against defendants here.

### A. Defendants Have Not Made a Strong Showing That They Will Succeed on the Merits.

Although defendants seek a stay of the preliminary injunction in its entirety, their six-page motion does not contest this Court's conclusions respecting standing, ripeness, the scope of APA review, or the likelihood of success on the merits. Instead, defendants contend that the preliminary injunction should have (i) been limited to actions that are necessary to accomplish the agencies'

---

[2] The First Circuit denied defendants' request for an administrative stay and ordered that, to the extent this Court denies defendants' motion, plaintiffs respond to defendants' motion in the First Circuit within two days of this Court's decision. Order of Court (May 27, 2025), *Rhode Island v. Trump*, No. 25-1477, 1st Cir. ECF No. 00118290703.

statutory mandates (Mot. at 2), and (ii) excluded relief pertaining to grant disbursements (*id.* at 4). Both arguments are wrong.

### 1. Defendants' Arguments About the Scope of the Preliminary Injunction Are Both Waived and Meritless.

Defendants' complaints about the purported breadth of the preliminary injunction ring hollow. The preliminary injunction order is tailored to undo defendants' unlawful actions and to prevent defendants from unlawfully attempting to implement the *Reduction* EO and dismantle the agencies again during the pendency of this case. If defendants seek a narrower injunction, they had ample opportunity to propose such language to the Court. In fact, defendants proposed specific language that the Court adopted in the order verbatim—and that defendants now find too restrictive. *Compare* Ex. A at 3 (proposing language about "personnel decisions"), *with* Mot. at 3 (criticizing order "in terms of personnel decisions"). For example, after defendants questioned whether "taking internal efforts to improve efficiency" would run afoul of the injunction (Defs.' Resp. to Pls.' Proposed Order at 2 (May 9, 2025), ECF No. 59), the Court accepted defendants' proposed language carving out an exception for "actions that would improve Agency efficiency" (Prelim. Inj. ¶ 3). Yet defendants still claim that the provisions are "overbroad" (Mot. at 2), despite offering no alternative other than a stay of the preliminary injunction in its entirety. At this point, after having an opportunity to review the order and propose modifications to its language, defendants have waived any additional arguments about the language in the order.

Compounding the problem, defendants' assertions about operations at IMLS, MBDA, and FMCS rely on new information that was not presented to the Court during briefing on the preliminary injunction. *See* ECF Nos. 63-1, 63-2, 63-3. Introducing such evidence now—and not when the Court was deciding the injunction motion or soliciting the parties' views on the scope of

the order—undermines the Court's decision-making process. *See United States v. Zenon*, 711 F.2d 476, 478 (1st Cir. 1983) (parties "must state their objections to the injunction to the district court, so that the district court can consider them and correct the injunction if necessary, without the need for appeal"). In any event, none of the belatedly proffered evidence demonstrates that the agencies were fulfilling (or were capable of fulfilling) their statutorily mandated functions when the injunction issued.

Defendants' arguments about the scope of the injunction also fail on the merits. Contrary to defendants' assertions (Mot. at 2-4), nothing in the preliminary injunction stops them from taking lawful steps to manage the three agencies going forward. As to staffing, the order "does not preclude the [] Defendants from making personnel decisions that are not related to or motivated by" the *Reduction* EO (Prelim. Inj. ¶ 4)—language that defendants themselves proposed. *See* Ex. A at 3. The agencies retain ample discretion to make individualized employment decisions based on employee performance, for example, independent from the *Reduction* EO. The agencies may also "pause, cancel, or otherwise terminate" grants or contracts if grantees or contractors breach applicable terms. Prelim. Inj. ¶ 5. In the same vein, defendants may continue to implement directives aimed at improving the agencies' efficiency, provided that the agencies proceed lawfully. For instance, defendants allege that the order forced IMLS to halt its move to a smaller office space, which would have saved the agency approximately $1.3 million per year. Mot. at 3. If that move would improve agency efficiency, as defendants contend (Decl. of Keith E. Sonderling ¶ 16 (May 19, 2025), ECF No. 63-1 (Sonderling Decl.)), then the agency may proceed under the Court's order so long as it follows the substantive and procedural requirements set out therein. *See* Prelim. Inj. ¶ 3. The same basic guidelines apply to other contemplated agency initiatives.

If a specific agency action raises questions about defendants' compliance with the order, defendants can meet and confer with plaintiffs, seek clarification from the Court, or both. Indeed, defendants recently conferred with plaintiffs to clarify the scope of the order as it pertains to grant reinstatements. Defs.' Status Report ¶ 3 (May 20, 2025), ECF No. 64. A stay of the preliminary injunction is therefore unnecessary to address specific issues defendants may raise in implementing the order.

On the whole, defendants' objections to the scope of the preliminary injunction merely repackage their arguments against imposing *any* preliminary injunction. Defendants argue that the order unfairly connotes "a taint of illegality" to agency actions taken after March 14, 2025, when the *Reduction* EO went into effect. Mot. at 3. But plaintiffs made a strong showing—unchallenged here—that all of defendants' actions implementing the *Reduction* EO after March 14 were illegal. See Mem. & Order at 2. The restrictions in the order correspond to defendants' likely statutory and constitutional violations. While defendants object that the injunction goes beyond requiring them to fulfill "mandatory statutory functions" (Mot. at 2; *see id.* at 4), the Court found that defendants unlawfully terminated functions regardless of whether the functions were statutorily mandated or not. In either case, defendants failed to engage in reasoned decision making and eliminated functions in a way that rendered the agencies unable to expend their congressionally appropriated funds. Mem. & Order at 31, 35-39.

In addition, limiting the injunction to "mandatory statutory functions" would make no sense because the Court concluded that "the Defendants have not shown that any analysis was conducted to determine which 'components and functions' of IMLS, MBDA, and FMCS are statutorily required, and which are not." *Id.* at 27. Likewise, defendants' repeated invocation of the executive branch's "priorities" and "decision-making discretion" (Mot. at 2, 5) ignores the Court's

fundamental finding that defendants' actions contravened multiple statutory and constitutional provisions, including the agencies' obligations to expend funds appropriated by Congress. *See id.* at 2.

### 2.  Defendants' Arguments About This Court's Jurisdiction Are Meritless.

Next, repeating the same argument this Court previously rejected, defendants urge that the Supreme Court's stay order in *Department of Education v. California*, 145 S. Ct. 966 (2025), strips this Court of jurisdiction over what defendants describe as "grant-based claims." *See* Mot. at 4-5. For the reasons set forth in the Court's decision, however, *California* "does not render [it] an improper forum for the States' claims under the APA." Mem. & Order at 14-15.

As the Court recognized, *California* did not purport to disturb well-settled law channeling contract disputes to the Court of Federal Claims. *Id.* at 15-16. Before *California* and now, a claim falls within the Tucker Act's exclusive jurisdiction if it "is at its essence a contract claim." *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982); *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 96-97 (1st Cir. 2025) (examining "the 'essence' of the claims"); *Community Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, No. 25-cv-2847, 2025 WL 1168898, at *3 (N.D. Cal. Apr. 21, 2025) ("[T]he Government fails to identify anything different about the law following the Supreme Court's order[.]"). The "longstanding test" for evaluating a claim's essential character under the Tucker Act hinges on (i) "the source of the rights upon which the plaintiff bases its claims" and (ii) "the type of relief sought." *Crowley Gov't Servs., Inc. v. General Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (quotation marks omitted).

This is not a contract dispute. *First*, plaintiffs' claims arise from alleged violations of the APA and the Constitution—not the terms of any contract. *See* Mem. & Order at 57, at 16 ("[T]he States' challenges are grounded on whether the Defendants' actions exceeded the bounds of their

*statutory* or *constitutional* authorities"). The rights on which plaintiffs base their claims "exist[ed] prior to and apart from rights created under" grant agreements or any other contract with the federal government. *See Crowley*, 38 F.4th at 1107 (quotation marks omitted); *American Bar Ass'n v. U.S. Dep't of Just.*, No. 25-cv-1263, 2025 WL 1388891, at *5 (D.D.C. May 14, 2025). And the grant terminations comprised only one facet of defendants' demolition campaign at the three agencies. With respect to FMCS, plaintiffs' harms did not stem from grant terminations at all but from the elimination of agency programs and the dismantling of key agency functions. *See* Decl. of Matthew Taibi (Apr. 3, 2025), ECF No. 3-32 (Taibi Decl.); Decl. of Jesse Martin (Apr. 4, 2025), ECF No. 3-45 (Martin Decl.). The harms from gutting MBDA manifested primarily in the agency's inability to perform its statutory functions, service existing MBDA centers, and issue new grant solicitations. *See* ECF Nos. 3-10, 3-11, 3-41. The grant terminations that are cited as evidence of plaintiffs' harms therefore do not transform this action into a contract dispute and thereby deprive the Court of jurisdiction it otherwise has. *See Megapulse*, 672 F.2d at 968; *Crowley*, 38 F.4th at 117 (rejecting notion "that any case requiring some reference to or incorporation of a contract is necessarily . . . within the Tucker Act" (quotation marks omitted)).

Significantly, "the terms and conditions of each individual grant award" are not "at issue" here. *See California*, 132 F.4th at 96-97. Indeed, defendants have expressly conceded that "[p]laintiffs do not challenge specific grant terminations [or] specific payments they claim to be entitled to." Defs.' Opp'n at 21. Though defendants emphasize that grants are disbursed pursuant to grant agreements (Mot. at 4), defendants did not terminate the grants pursuant to the terms of individual grant agreements. And "nowhere are the parties quibbling over whether the States subject to those grant terminations breached the terms or conditions of the underlying agreements." Mem & Order at 16. By contrast, in *California*, the federal government expressly framed the dispute as whether

10

the agencies terminated grants "in violation of the grant instruments' terms and conditions." *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 25-cv-00400, 2025 WL 1380421, at *3 (D.D.C. May 13, 2025) (quoting Application to Vacate, *California*, No. 24A, 2025 WL 945313, at *14).[3] The preliminary injunction order tracks this distinction. It does not enjoin defendants' ability to terminate contracts based on a counterparty's noncompliance with specific terms (Prelim Inj. ¶ 5), the type of ordinary contract dispute that falls within the Tucker Act's ambit.

*Second*, to remedy alleged statutory and constitutional violations, plaintiffs seek equitable relief—not money damages under the Tucker Act. Mem. & Order at 16-17. Plaintiffs do not seek "money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated," *Bowen v. Massachusetts*, 487 U.S. 879, 900 (1988)—damage that would greatly exceed the amount of terminated grant funding. Rather, plaintiffs seek to enforce statutory and constitutional mandates, which may result in the disbursement of money. *Id.*; *see New York v. Trump*, No. 25-cv-39, 2025 WL 1098966, at *2 (D.R.I. Apr. 14, 2025). As *California* reiterated, "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." 145 S. Ct. at 968 (quoting *Bowen*, 487 U.S. at 910).

Moreover, the Tucker Act undisputedly cannot preclude jurisdiction over plaintiffs' constitutional claims, which defendants do not dispute for purposes of this stay application. *See*

---

[3] Other than *California* itself, the only case defendants cite in support of their Tucker Act argument is a one-sentence order issued by the Fourth Circuit (Mot. at 5), which contains no analysis. *See American Ass'n of Colls. for Tchr. Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337, at *1 (4th Cir. Apr. 10, 2025). In contrast, a growing number of courts in this Circuit that have analyzed *California* have forcefully rejected the broad interpretation that defendants advance here. *See, e.g.*, *Association of Am. Univs. v. Department of Energy*, No. 25-cv-10912, 2025 WL 1414135, at *6 (D. Mass. May 15, 2025); *Massachusetts v. Kennedy*, No. 25-cv-10814, 2025 WL 1371785, at *7-9 (D. Mass. May 12, 2025).

*American Bar Ass'n*, 2025 WL 1388891, at *6. The same goes for plaintiffs' ultra vires claims against the individual defendants. So, a stay of the entire preliminary injunction is unwarranted in any event.

### B. Defendants Have Not Shown Irreparable Injury.

Defendants fail to demonstrate that they are irreparably harmed by complying with the order. Having previously argued that "economic harm does not compromise [sic] 'irreparable injury' under First Circuit precedent" to oppose a preliminary injunction (Defs.' Opp'n at 32), defendants now rely exclusively on economic harm to justify a stay of the preliminary injunction. *See* Mot. at 5-6. Defendants' about-face is unavailing, however, because the alleged expenditures they identify do not warrant a stay. For example, defendants claim that the preliminary injunction prevents them from spending taxpayer money in accordance with Congress's statutory mandate. Mot. at 5. But this Court found—and defendants' motion does not dispute—that the agencies "flout[ed] their statutory mandates" and as a result of the actions challenged in this lawsuit were left unable to expend the funds that Congress appropriated to them. Mem & Order at 32, 36-37. As a result, defendants were "usurping Congress's: (1) power of the purse, by disregarding congressional appropriations; and (2) vested legislative authority to create and abolish federal agencies." *Id.* at 40. The preliminary injunction aimed to undo these unlawful actions. And defendants have "made no showing that dispersing congressionally appropriated funds for statutorily mandated purposes would cause irreparable harm in this case." *Community Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, No. 25-2808, 2025 WL 1393876, at *6 (9th Cir. May 14, 2025).

Though defendants continue to speculate that "there may be no way to recover the funds" (Mot. at 5) if they ultimately prevail on appeal, that argument lacks support. Defendants'

declarations offer conclusory statements that grant funds "cannot be recovered" (Sonderling Decl. ¶ 18), but they elsewhere contradict that assertion by stating that grant payments ultimately found to be unwarranted "constitute a debt to the federal government" that may be recovered through "debt collection procedures." *See* Decl. of Kelly Mitchell ¶ 12 (May 19, 2025), ECF No. 63-2. Regardless, defendants' claim that making grant payments as required by law constitutes irreparable harm is the same "dubious" argument already rejected by this Court (Mem. & Order at 48), and the First Circuit, *New York v. Trump*, 133 F.4th 51, 72 (1st Cir. 2025). Indeed, the en banc D.C. Circuit recently issued a stay of an earlier panel decision that had credited the same argument defendants make here. *See Middle E. Broad. Networks, Inc. v. Lake*, No. 25-5150, 2025 WL 1378735, at *1 (D.C. Cir. May 7, 2025); *see also Department of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753, 757 (2025) (Alito, J., dissenting) (denying stay over similar objection by government); *California*, 145 S. Ct. at 974 (noting that "the Government has various legal mechanisms to recoup these kinds of funds") (Jackson, J., dissenting).

The "harm" that defendants now allege amounts to nothing more than the costs of undoing their own unlawful actions. This Court has ruled that defendants' actions likely flouted statutory and constitutional mandates—rulings uncontested on this motion—and caused irreparable harm to plaintiff States. Mem. & Order at 2, 45. The costs to undo defendants' unlawful actions cannot outweigh the irreparable harm that would result from continuing the unlawful actions. The injunction thus properly restored the parties to the status quo before those unlawful actions occurred. *See Braintree Lab'ys, Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 41 n.5 (1st Cir. 2010) (determining status quo by "the last uncontested status which preceded the pending controversy" (quotation marks omitted)). Given the "strong likelihood" that plaintiffs will ultimately prevail on their claims (Mem & Order at 31), "the cost of that restoration is proportionate to the

dislocation the government chose to undertake."[4] *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *15 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting), *stay granted in part sub nom.*, 2025 WL 1378735, at *1 (D.C. Cir. May 7, 2025). As a result, the government cannot "be heard to complain about damage inflicted by its own hand." *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976).

By contrast, the damage that defendants' actions inflicted on plaintiffs was severe, widespread, and unrebutted. Plaintiffs' preliminary injunction motion was supported by hundreds of pages of declarations detailing defendants' efforts to incapacitate the agencies and the consequent harms plaintiffs experienced and would continue to experience absent injunctive relief. *See* ECF Nos. 3-1 through 3-45, ECF No. 35. Defendants submitted *no* evidence to rebut plaintiffs' showing. As the Court summed up:

> [T]he implementation of the *Reduction* EO at IMLS, MBDA, and FMCS has disrupted numerous critical state library and museum services and programs, impeded the resolution of time-sensitive labor disputes involving State entities, and curtailed broad-ranging training, consultation, and technical assistance services and programs that facilitate the growth of minority business enterprises.

Mem & Order at 45. On this motion, defendants offer only the conclusory statement that plaintiffs' harms "are neither certain nor irreparable" (Mot. at 5), not grappling with the extensive evidence demonstrating otherwise.[5] The one-sided record of irreparable harm reinforces why a stay of the preliminary injunction is not warranted.

---

[4] The amounts of time, money, and resources allegedly needed to reverse course on the agencies' actions dispel the notion that the actions were "'preliminary' in nature" and thus immune from judicial review. Defs.' Opp'n at 23.

[5] Defendants also assert that at least three grants were voluntarily restored to plaintiff States before the preliminary injunction order was entered. Sonderling Decl. ¶ 9. But defendants do not articulate why these piecemeal actions should justify a stay of the preliminary injunction in its entirety. To the extent defendants are implying that part of the order has been mooted, "a

(*continued on the next page*)

14

### C. The Remaining Factors Weigh Against a Stay.

Lastly, defendants fail to show that the public interest or balance of the equities favor a stay. As this Court correctly observed, "there is 'generally no public interest in the perpetuation of unlawful agency action.'" Mem. & Order at 46 (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). The public interest is particularly disserved by a stay here because defendants seek to resume unlawful actions they do not defend on the merits. And though defendants purport to protect taxpayer funds (Mot. at 5), any costs borne by taxpayers as a result of the injunction stems from defendants' own statutory and constitutional violations. *See* Mem. & Order at 46. And to the extent the preliminary injunction means the agencies will expend congressionally appropriated funds, that is not an injury but a constitutional and statutory requirement, as this Court held.

On top of that, staying the injunction would "substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 426. Plaintiff States rely on receiving direct funds and critical services from IMLS, MBDA, and FMCS. *See* Mem. & Order at 29-30. In Rhode Island, FMCS ensures labor peace in the healthcare industry (Taibi Decl. ¶ 10), and plaintiffs explained in their preliminary injunction motion that labor negotiations with Butler Hospital were "extremely likely to lead toward a strike without the benefit of FMCS mediation" (Martin Decl. ¶ 14). That strike is now in full effect, illustrating the real-world consequences of unlawful agency action. The stay that

---

defendant's voluntary cessation of putatively illegal or unconstitutional conduct will not moot a case, unless the defendant meets the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *In re Fin. Oversight & Mgmt. Bd.*, 16 F.4th 954, 961-62 (1st Cir. 2021) (quotation marks omitted). Defendants do not come close to meeting that burden here.

defendants now seek would perpetuate the "plethora of injuries" to plaintiff States that the injunction sought to forestall. Mem. & Order at 46.

## CONCLUSION

The Court should deny a stay pending appeal.

Dated:    New York, New York
          May 27, 2025

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

*/s/ Natalya A. Buckler*
Kathryn M. Sabatini (RI Bar No. 8486)
Chief, Civil Division
Special Assistant Attorney General
Katherine Connolly Sadeck (RI Bar No. 8637)
Solicitor General
Assistant Attorney General
Keith D. Hoffmann (RI Bar No. 9872)
Chief of Policy
Assistant Attorney General
Natalya A. Buckler (RI Bar No. 8415)
Assistant Attorney General
Paul Meosky (RI Bar No. 10742)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Phone: (401) 274-4400
Fax: (401) 222-2995
ksabatini@riag.ri.gov
ksadeck@riag.ri.gov
khoffmann@riag.ri.gov
nbuckler@riag.ri.gov
pmeosky@riag.ri.gov
*Attorneys for the State of Rhode Island*

**LETITIA JAMES**
Attorney General for the State of New York

*/s/ Kartik Naram*
Ester Murdukhayeva
Deputy Solicitor General
Kartik Naram*
Assistant Solicitor General
Abigail Katowitz-Liu
Assistant Attorney General
Rabia Muqaddam
Special Counsel for Federal Initiatives
Sean Bunny
Assistant Attorney General
28 Liberty St.
New York, NY 10005
(212) 416-8922
ester.murdukhayeva@ag.ny.gov
kartik.naram@ag.ny.gov
abigail.katowitz-liu@ag.ny.gov
rabia.muqaddam@ag.ny.gov
sean.bunny@ag.ny.gov
*Attorneys for the State of New York*

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

*/s/ Kalikoʻonālani D. Fernandes*
David D. Day
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov


**KRISTIN K. MAYES**
Attorney General
State of Arizona

*/s/ Syreeta A. Tyrell*
Syreeta A. Tyrell
Assistant Attorney General
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-8310
Syreeta.Tyrell@azag.gov
ACL@azag.gov
*Attorneys for the State of Arizona*


**ROB BONTA**
Attorney General of California

*/s/ Jay C. Russell*
Jay C. Russell
Deputy Attorney General
Thomas S. Patterson
Senior Assistant Attorney General
Anya M. Binsacca
Supervising Deputy Attorney General
Zelda Vassar
Deputy Attorney General
California Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3617
Jay.Russell@doj.ca.gov

Zelda.Vassar@doj.ca.gov
*Counsel for the State of California*


**PHILIP J. WEISER**
Attorney General of Colorado

*/s/ David Moskowitz*
David Moskowitz
*Deputy Solicitor General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov


**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Ashley Meskill*
Ashley Meskill
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
Phone: (860) 808 5270
Ashley.Meskill@ct.gov


**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

*/s/ Vanessa L. Kassab*
Ian R. Liston
Director of Impact Litigation
Vanessa L. Kassab
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

20

**KWAME RAOUL**
Attorney General of Illinois

/s/ *Holly F.B. Berlin*
HOLLY F.B. BERLIN
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-3000
holly.berlin@ilag.gov
Counsel for the State of Illinois

**AARON M. FREY**
Attorney General for
the State of Maine

/s/ *Vivian A. Mikhail*
Vivian A. Mikhail
Deputy Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel.:  207-626-8800
Fax:  207-287-3145
Vivian.Mikhail@maine.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

/s/ *Keith M. Jamieson*
Keith M. Jamieson
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6960
kjamieson@oag.state.md.us
*Attorneys for the State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

/s/ *Katherine Dirks*
Katherine Dirks
*Chief State Trial Counsel*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
*Attorney for the State of Massachusetts*

**DANA NESSEL**
Attorney General for the People of Michigan

/s/ *Neil Giovanatti*
Neil Giovanatti
BreAnna Listermann
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
ListermannB@michigan.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

/s/ *Jacob Harris*
Jacob Harris
Assistant Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
(651) 757-1156
Jacob.Harris@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

/s/ *Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov


**MATTHEW J. PLATKIN**
Attorney General of New Jersey

*/s/ Joshua Bohn*
Joshua Bohn
Max Lesser*
   *Deputy Attorneys General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(609) 696-5366
Joshua.Bohn@law.njoag.gov
Max.Lesser@law.njoag.gov
*Counsel for the State of New Jersey*


**RAÚL TORREZ**
Attorney General of New Mexico

/s/ *Anjana Samant*
Anjana Samant
Deputy Counsel for Impact Litigation
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
asamant@nmdoj.gov
*Attorney for Plaintiff State of New Mexico*


**DAN RAYFIELD**
Attorney General for the State of Oregon

/s/ *Brian Simmonds Marshall*
Brian Simmonds Marshall
*Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
(971) 673-1880
brian.s.marshall@doj.oregon.gov
*Attorneys for the State of Oregon*


**CHARITY R. CLARK**
Attorney General for the State of Vermont

*/s/ Ryan P. Kane*
Ryan P. Kane
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
ryan.kane@vermont.gov


**NICHOLAS W. BROWN**
Attorney General for the State of Washington

/s/ *Kate S. Worthington*
Kate S. Worthington, WSBA #47556
Sarah E. Smith-Levy, WSBA #55770
Assistant Attorneys General
7141 Cleanwater Drive SW
P.O. Box 40111
Olympia, WA 98504-0111
(306) 709-6470
kate.worthington@atg.wa.gov
sarah.e.smith-levy@atg.wa.gov
Attorneys for Plaintiff State of Washington

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

/s/ *Colin T. Roth*
Colin T. Roth
Assistant Attorney General
WI State Bar #1103985
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-7636
rothct1@doj.state.wi.us
Attorney for Plaintiff State of Wisconsin

*Applications for pro hac vice forthcoming

# EXHIBIT A

**From:** Gonzalez, Heidy (CIV) <Heidy.Gonzalez@usdoj.gov>
**Sent:** Tuesday, May 13, 2025 10:22 AM
**To:** Jack McConnell <Judge_McConnell@RID.USCOURTS.GOV>; Natalya Buckler
<NBuckler@riag.ri.gov>; Katherine Sadeck <KSadeck@riag.ri.gov>; Kate Sabatini
<KSabatini@riag.ri.gov>; Keith Hoffmann <KHoffmann@riag.ri.gov>; Paul Meosky
<pmeosky@riag.ri.gov>; abigail.katowitz-liu@ag.ny.gov; rabia.muqaddam@ag.ny.gov;

rabia.muqaddam@ag.ny.gov; sean.bunny@ag.ny.gov; david.d.day@hawaii.gov; kaliko.d.fernandes_hawaii_gov <kaliko.d.fernandes@hawaii.gov>; Jay.Russell@doj.ca.gov; Zelda.Vassar@doj.ca.gov; david.moskowitz@coag.gov; Ashley.Meskill@ct.gov; vanessa.kassab@delaware.gov; holly.berlin@ilag.gov; vivian.mikhail@maine.gov; kjamieson@oag.state.md.us; katherine.dirks@mass.gov; ListermannB@michigan.gov; GiovanattiN@michigan.gov; jacob.harris@ag.state.mn.us; hstern_ag.nv.gov <hstern@ag.nv.gov>; Joshua.Bohn@law.njoag.gov; asamant@nmdoj.gov; brian.s.marshall@doj.oregon.gov; ryan.kane@vermont.gov; kate.worthington@atg.wa.gov; Sarah.E.Smith-Levy@atg.wa.gov; rothct1@doj.state.wi.us; Syreeta.Tyrell@azag.gov; Stout, Abigail (CIV) <Abigail.Stout@usdoj.gov>; Heiman, Julia (CIV) <Julia.Heiman@usdoj.gov>
**Cc:** Amanda Rotimi <Amanda_Rotimi@rid.uscourts.gov>; Ryan Jackson <Ryan_Jackson@RID.USCOURTS.GOV>
**Subject:** RE: RI v. Trump 25-128

[External email: Use caution with links and attachments]
Good morning, Judge McConnell,

Thank you for affording Defendants the opportunity to weigh in. Attached please find edits in red line for your consideration.

Best,

Heidy L. Gonzalez
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs
(202) 598-7409
Heidy.Gonzalez@usdoj.gov

---

**From:** Jack McConnell <Judge_McConnell@RID.USCOURTS.GOV>
**Sent:** Tuesday, May 13, 2025 6:41 AM
**To:** Natalya Buckler <NBuckler@riag.ri.gov>; Katherine Sadeck <KSadeck@riag.ri.gov>; Kate Sabatini <KSabatini@riag.ri.gov>; Keith Hoffmann <KHoffmann@riag.ri.gov>; Paul Meosky <pmeosky@riag.ri.gov>; abigail.katowitz-liu@ag.ny.gov; rabia.muqaddam@ag.ny.gov; sean.bunny@ag.ny.gov; david.d.day@hawaii.gov; kaliko.d.fernandes_hawaii_gov <kaliko.d.fernandes@hawaii.gov>; Jay.Russell@doj.ca.gov; Zelda.Vassar@doj.ca.gov; david.moskowitz@coag.gov; Ashley.Meskill@ct.gov; vanessa.kassab@delaware.gov; holly.berlin@ilag.gov; vivian.mikhail@maine.gov; kjamieson@oag.state.md.us; katherine.dirks@mass.gov; ListermannB@michigan.gov; GiovanattiN@michigan.gov; jacob.harris@ag.state.mn.us; hstern_ag.nv.gov <hstern@ag.nv.gov>; Joshua.Bohn@law.njoag.gov; asamant@nmdoj.gov; brian.s.marshall@doj.oregon.gov; ryan.kane@vermont.gov; kate.worthington@atg.wa.gov; Sarah.E.Smith-Levy@atg.wa.gov; rothct1@doj.state.wi.us; Syreeta.Tyrell@azag.gov; Stout, Abigail (CIV) <Abigail.Stout@usdoj.gov>; Gonzalez, Heidy (CIV) <Heidy.Gonzalez@usdoj.gov>; Heiman, Julia (CIV) <Julia.Heiman@usdoj.gov>
**Cc:** Amanda Rotimi <Amanda_Rotimi@rid.uscourts.gov>; Ryan Jackson

<Ryan_Jackson@RID.USCOURTS.GOV>
**Subject:** [EXTERNAL] RE: RI v. Trump 25-128

Thank you.  I have accepted all the red-lined changes.  If the Defendants want the Court to consider any changes in the form of order (as attached), kindly send a red-lined before the close of business today.

Thanks all.



John J. McConnell, Jr. | Chief Judge | he/him
U.S. District Court for the District of Rhode Island
One Exchange Terrace
Providence, RI 02903
Direct Dial: 401-752-7020

https://www.rid.uscourts.gov

---

**From:** Natalya Buckler <NBuckler@riag.ri.gov>
**Sent:** Monday, May 12, 2025 6:01 PM
**To:** Jack McConnell <Judge_McConnell@RID.USCOURTS.GOV>; Katherine Sadeck <KSadeck@riag.ri.gov>; Kate Sabatini <KSabatini@riag.ri.gov>; Keith Hoffmann <KHoffmann@riag.ri.gov>; Paul Meosky <pmeosky@riag.ri.gov>; abigail.katowitz-liu@ag.ny.gov; rabia.muqaddam@ag.ny.gov; rabia.muqaddam@ag.ny.gov; sean.bunny@ag.ny.gov; david.d.day@hawaii.gov; kaliko.d.fernandes_hawaii_gov <kaliko.d.fernandes@hawaii.gov>; Jay.Russell@doj.ca.gov; Zelda.Vassar@doj.ca.gov; david.moskowitz@coag.gov; Ashley.Meskill@ct.gov; vanessa.kassab@delaware.gov; holly.berlin@ilag.gov; vivian.mikhail@maine.gov; kjamieson@oag.state.md.us; katherine.dirks@mass.gov; ListermannB@michigan.gov; GiovanattiN@michigan.gov; jacob.harris@ag.state.mn.us; hstern_ag.nv.gov <hstern@ag.nv.gov>; Joshua.Bohn@law.njoag.gov; asamant@nmdoj.gov; brian.s.marshall@doj.oregon.gov; ryan.kane@vermont.gov; kate.worthington@atg.wa.gov; Sarah.E.Smith-Levy@atg.wa.gov; rothct1@doj.state.wi.us; Syreeta.Tyrell@azag.gov; abigail.stout@usdoj.gov; heidy.gonzalez@usdoj.gov; julia.heiman@usdoj.gov
**Cc:** Amanda Rotimi <Amanda_Rotimi@rid.uscourts.gov>; Ryan Jackson <Ryan_Jackson@RID.USCOURTS.GOV>
**Subject:** RE: RI v. Trump 25-128

**CAUTION - EXTERNAL:**

Good evening, Judge McConnell,

Attached are redlines from the plaintiff States. Please let us know if you have any questions or need anything further.

Best,
Natasha

**Natalya (Natasha) A. Buckler**
**Chief of Employment Litigation and General Counsel**
**Assistant Attorney General**
Rhode Island Office of the Attorney General
150 South Main Street | Providence, RI 02903
Office: +1 401 274 4400 | Ext: 2022
nbuckler@riag.ri.gov | www.riag.ri.gov



**From:** Jack McConnell <Judge_McConnell@RID.USCOURTS.GOV>
**Sent:** Monday, May 12, 2025 12:46 PM
**To:** Katherine Sadeck <KSadeck@riag.ri.gov>; Kate Sabatini <KSabatini@riag.ri.gov>; Keith Hoffmann <KHoffmann@riag.ri.gov>; Paul Meosky <pmeosky@riag.ri.gov>; Natalya Buckler <NBuckler@riag.ri.gov>; abigail.katowitz-liu@ag.ny.gov; rabia.muqaddam@ag.ny.gov; rabia.muqaddam@ag.ny.gov; sean.bunny@ag.ny.gov; david.d.day@hawaii.gov; kaliko.d.fernandes_hawaii_gov <kaliko.d.fernandes@hawaii.gov>; Jay.Russell@doj.ca.gov; Zelda.Vassar@doj.ca.gov; david.moskowitz@coag.gov; Ashley.Meskill@ct.gov; vanessa.kassab@delaware.gov; holly.berlin@ilag.gov; vivian.mikhail@maine.gov; kjamieson@oag.state.md.us; katherine.dirks@mass.gov; ListermannB@michigan.gov; GiovanattiN@michigan.gov; jacob.harris@ag.state.mn.us; hstern_ag.nv.gov <hstern@ag.nv.gov>; Joshua.Bohn@law.njoag.gov; asamant@nmdoj.gov; brian.s.marshall@doj.oregon.gov; ryan.kane@vermont.gov; kate.worthington@atg.wa.gov; Sarah.E.Smith-Levy@atg.wa.gov; rothct1@doj.state.wi.us; Syreeta.Tyrell@azag.gov; abigail.stout@usdoj.gov; heidy.gonzalez@usdoj.gov; julia.heiman@usdoj.gov
**Cc:** Amanda Rotimi <Amanda_Rotimi@rid.uscourts.gov>; Ryan Jackson <Ryan_Jackson@RID.USCOURTS.GOV>
**Subject:** RI v. Trump 25-128

[External email: Use caution with links and attachments]
Counsel – I have drafted a proposed preliminary injunction order – attached. I have tried to take all parties' comments and perspectives into consideration in drafting this Order to effectuate the Court's prior Memorandum and Order.

Instead of a chambers' conference tomorrow, the parties should simply send me a red-line of this proposed Order, and after considering the submissions, I will enter a Final Preliminary Injunction Order.

Thanks all.

John J. McConnell, Jr. | Chief Judge | he/him
U.S. District Court for the District of Rhode Island
One Exchange Terrace
Providence, RI 02903



Direct Dial: 401-752-7020

https://www.rid.uscourts.gov

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF RHODE ISLAND; STATE OF NEW YORK; STATE OF HAWAI'I; STATE OF ARIZONA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| DONALD J. TRUMP, in his official capacity as President of the United States; INSTITUTE OF MUSEUM AND LIBRARY SERVICES; KEITH E. SONDERLING, in his official capacity as Acting Director of the Institute of Museum and Library Services; MINORITY BUSINESS AND DEVELOPMENT AGENCY; MADIHA D. LATIF, in her official capacity as Deputy Under Secretary of Commerce for Minority Business Development; HOWARD LUTNICK, in his official capacity as Secretary of Commerce; FEDERAL MEDIATION AND CONCILIATION SERVICE; GREGORY GOLDSTEIN, in his official capacity as Acting Director of the Federal Mediation and Conciliation | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

C.A. No. 1:25-cv-00128-JJM-LDA

| | |
|---|---|
| Service; OFFICE OF MANAGEMENT AND BUDGET; RUSSELL T. VOUGHT, in his official capacity as Director of the Office of Management and Budget; | ) ) ) ) ) ) |
| Defendants. | ) ) ) ) |

## PRELIMINARY INJUNCTION

For the reasons contained in this Court's Memorandum and Order (ECF No. 57), it is hereby ORDERED that a PRELIMINARY INJUNCTION is entered. Agency Defendants, their officers, agents, employees, and attorneys, and any other persons who are in active concert or participation with Defendants or their officers, agents, employees, or attorneys,[1] are hereby ordered as follows:

1. The Defendants Institute of Museum and Library Services ("IMLS"), Keith E. Sonderling, Minority Business and Development Agency ("MBDA"), Madiha D. Latif, Howard Lutnick, Federal Mediation and Conciliation Service ("FMCS"); Gregory Goldstein, Office of Management and Budget, Russell T. Vought (collectively "Agency Defendants")[2] are enjoined from implementing Section 2 of the Executive Order 14238, "Continuing the Reduction of the Federal Bureaucracy" as to IMLS, MBDA, and FMCS.

---

[1] This Order binds Defendants' officers, agents, employees, attorneys, and other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).  Fed. R. Civ. P. 65(d)(2).

[2] Individual defendants are enjoined in their official capacities only.

2

2. The Agency Defendants must promptly take all necessary steps to reverse any policies, memoranda, directives, or actions issued before this Order that were designed or intended, in whole or in part, to implement, give effect to, comply with, or carry out the directives contained in Executive Order 14238 with respect to IMLS, MBDA, or FMCS.

3. The Agency Defendants shall not take any further actions to eliminate IMLS, MBDA, and FMCS ~~or its operations~~ pursuant to Executive Order 14238 ~~or any similar order, policy, or directive~~. Nothing in this Order shall be construed to preclude the Agency Defendants from taking actions that would improve Agency efficiency or reduce the size or scope of the Agency Defendants as long as (a) the Agency Defendant provides a reasoned explanation for such action, and (b) the action will not prevent the Agency Defendant from fulfilling any of their statutory obligations.

> **Commented [A1]:** The thought behind this suggestion is to avoid the Order covering a situation where an Agency Defendant takes steps to streamline operations or improve efficiencies independent of the EO that could be construed as eliminating part of its operations.

4. The Agency Defendants shall take all necessary steps to restore all IMLS, MBDA, and FMCS employees and personal service contractors, who were involuntarily placed on leave or involuntarily terminated due to the implementation of Executive Order 14238, to their status before March 14, 2025. Nothing in this Order precludes the Agency Defendants from making personnel decisions that are not related to or motivated by Executive Order 14238.

5. The Agency Defendants shall not further pause, cancel, or otherwise terminate IMLS or MBDA grants or contracts or fail to disburse funds to

3

recipients in plaintiff States according to such grants or contracts for reasons other than the grantees or contractors' non-compliances with applicable grant or contract terms.

6. The Agency Defendants shall take immediate steps to resume the processing, disbursement, and payment of already-awarded funding, and to release awarded funds previously withheld or rendered inaccessible due to or in reliance on Section 2 of the Executive Order 14238, "Continuing the Reduction of the Federal Bureaucracy" with respect to recipients in plaintiff States.

7. The Agency Defendants shall, within 7 days of the date of this Order, file with the Court a status report that confirms Defendants' full compliance with this Order or to the extent that full compliance was not practicable in that 7 day period, why full compliance is not practicable, and that details the actions Defendants have taken to comply with the Order.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

May 13, 2025

4

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that I filed the within via the ECF filing system and that a copy is available for viewing and downloading. I have also caused a copy to be sent via the ECF System to counsel of record on this 27th day of May, 2025.

<em><u>/s/ Paul T.J. Meosky</u></em>