# United States Court of Appeals
## For the First Circuit

No. 25-1477

STATE OF RHODE ISLAND; STATE OF NEW YORK; STATE OF HAWAI'I;
STATE OF ARIZONA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE
OF CONNECTICUT; STATE OF DELAWARE; STATE OF ILLINOIS; STATE OF
MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; PEOPLE
OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA;
STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE
OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN,
Plaintiffs, Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the
United States; INSTITUTE OF MUSEUM AND LIBRARY SERVICES; KEITH
E. SONDERLING, in his official capacity as Acting Director of
the Institute of Museum and Library Services; MINORITY BUSINESS
DEVELOPMENT AGENCY; MADIHA D. LATIF, in her official capacity as
Deputy Under Secretary of Commerce for Minority Business
Development; HOWARD LUTNICK, in his official capacity as
Secretary of Commerce; FEDERAL MEDIATION AND CONCILIATION
SERVICE; GREGORY GOLDSTEIN, in his official capacity as Acting
Director of the Federal Mediation and Conciliation Service; U.S.
OFFICE OF MANAGEMENT AND BUDGET; RUSSELL T. VOUGHT, in his
official capacity as Director of the Office of Management and
Budget,
Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Barron, Chief Judge,
Kayatta and Rikelman, Circuit Judges.

Brett A. Shumate, Assistant Attorney General, Yaakov M. Roth, Acting Assistant Attorney General, Sara Miron Bloom, Acting United States Attorney, Eric D. McArthur, Deputy Assistant Attorney General, Mark R. Freeman, Gerard Sinzdak, Simon G. Jerome, Attorneys, Appellate Staff Civil Division, U.S. Department of Justice, on brief for appellants.

Peter F. Neronha, Attorney General of Rhode Island, Kathryn M. Sabatini, Chief, Civil Division, Special Assistant Attorney General, Katherine Connolly Sadeck, Solicitor General, Keith D. Hoffmann, Chief of Policy, Assistant Attorney General, Natalya A. Buckler, Assistant Attorney General, Paul Meosky, Special Assistant Attorney General, Anne E. Lopez, Attorney General of Hawai'i, David D. Day, Special Assistant to the Attorney General, Kaliko'onālani D. Fernandes, Solicitor General, Letitia James, Attorney General of New York, Barbara D. Underwood, Solicitor General, Ester Murdukhayeva, Deputy Solicitor General, Kartik Naram, Assistant Solicitor General, Kristin K. Mayes, Attorney General of Arizona, Syreeta A. Tyrell, Assistant Attorney General, Rob Bonta, Attorney General of California, Jay C. Russell, Deputy Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Anya M. Binsacca, Supervising Deputy Attorney General, Zelda Vassar, Deputy Attorney General, Philip J. Weiser, Attorney General of Colorado, David Moskowitz, Deputy Solicitor General, William Tong, Attorney General of Connecticut, Ashley Meskill, Assistant Attorney General, Kathleen Jennings, Attorney General of Delaware, Ian R. Liston, Director of Impact Litigation, Vanessa L. Kassab, Deputy Attorney General, Kwame Raoul, Attorney General of Illinois, Holly F.B. Berlin, Assistant Attorney General, Aaron M. Frey, Attorney General of Maine, Vivian A. Mikhail, Deputy Attorney General, Anthony G. Brown, Attorney General of Maryland, Julia Doyle, Solicitor General, Keith M. Jamieson, Assistant Attorney General, Andrea Joy Campbell, Attorney General of Massachusetts, Katherine Dirks, Chief State Trial Counsel, Dana Nessel, Attorney General for the People of Michigan, Neil Giovanatti, BreAnna Listermann, Assistant Attorneys General, Keith Ellison, Attorney General of Minnesota, Jacob Harris, Assistant Attorney General, Aaron D. Ford, Attorney General of Nevada, Heidi Parry Stern, Solicitor General, Matthew J. Platkin, Attorney General of New Jersey, Joshua Bohn, Max Lesser, Deputy Attorneys General, Raúl Torrez, Attorney General of New Mexico, Anjana Samant, Deputy Counsel for Impact Litigation, Dan Rayfield, Attorney General of Oregon, Brian Simmons Marshall, Senior Assistant Attorney General, Charity R. Clark, Attorney General of Vermont, Ryan P. Kane, Deputy Solicitor General, Nicholas W. Brown, Attorney General of Washington, Kate S. Worthington, Sarah E. Smith-Levy, Assistant Attorneys General, Joshua L. Kaul, Attorney General of Wisconsin, Colin T. Roth,

Assistant Attorney General, on brief for appellees.

---

September 11, 2025

---

**BARRON, Chief Judge**.  On May 13, 2025, the United States District Court for the District of Rhode Island issued a preliminary injunction in response to a suit by twenty-one states. The suit challenges actions by various federal agencies and the officials who head them (collectively, the "agency defendants") to implement Executive Order 14,238, Continuing the Reduction of the Federal Bureaucracy (the "EO"), 90 Fed. Reg. 13043.  The President of the United States issued the EO on March 14, 2025.  The EO, among other things, in Section 2 directs federal officials to "eliminate[]" "the non-statutory components and functions" of several specified federal agencies and "reduce" their "statutory functions and associated personnel to the minimum presence and function required by law."  Id.

The relevant agencies in this suit are the Institute of Museum and Library Services (IMLS), the Minority Business Development Agency (MBDA), and the Federal Mediation and Conciliation Service (FMCS).  See id.  IMLS supports museums and libraries across the United States by disbursing federal funds and providing technical assistance.  See 20 U.S.C. §§ 9121-9165, 9171-9176.  MBDA provides various forms of assistance to support the growth of "minority-owned business" in the United States.  See 15 U.S.C. §§ 9511-9526.  FMCS is tasked with using conciliation and mediation to assist in the resolution of labor disputes in industries affecting commerce.  See 29 U.S.C. § 173(a).  All three

agencies were established by Congress and continue to receive annual appropriations from Congress. See Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, § 1101(a)(2), (8), 139 Stat. 9, 10-11 (2025).

The agency defendants and the President request a stay pending appeal of the District Court's preliminary injunction. The motion to stay the preliminary injunction is denied.

## I.

The plaintiffs' complaint alleges that, in response to the EO, the agency defendants fired, placed on administrative leave, or reassigned all or almost all employees in the three agencies. It further alleges that the agency defendants cancelled a broad array of grants that the agencies had made. The complaint alleges that the firing, placing on leave, and reassigning of employees have already resulted in and will continue to result in the plaintiffs not receiving services from the three agencies, including research and data collection, strategic guidance, administrative support, and training and mediation services. The complaint alleges that the grant terminations -- both those that the plaintiffs alleged already had occurred and those that the plaintiffs alleged would occur -- would require the plaintiffs to terminate their own employees whose salaries are funded by those grants, to cancel programming and services to the public, and to default on contracts with outside service providers.

The complaint sets forth claims that the challenged actions of the agency defendants are in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2), as well as various constitutional provisions. The complaint also pleads an "equitable ultra vires" claim alleging that the challenged actions "are contrary to law and outside of [the agency defendants'] authority."

On the same day that the plaintiffs filed the complaint, they moved for a temporary restraining order. The motion was later converted by stipulation of the parties to a motion for a preliminary injunction. The District Court granted the motion on May 6, 2025, and on May 13, 2025, after receiving input from the parties about the scope of its order granting the motion, issued a preliminary injunction.

The District Court found that, in consequence of the grants having been terminated, the plaintiffs and their agencies have already had to and would continue to have to "diminish" or "halt services," implement hiring freezes, "deny payments for contracted services," and "initiate layoffs." Indeed, it credited the representations of at least one plaintiff that one of its Business Centers "will close due to the termination" of its MBDA grant.

The District Court also found that in consequence of the reduction in capacity at each of the agencies, the plaintiffs would

- 6 -

lose access to critical information needed to carry out their community programming, and had been and would continue to be harmed by FMCS's inability to provide conciliation and mediation services on which plaintiffs rely to resolve public sector labor disputes. In addition, the District Court determined that, given the statutory basis for the agencies' responsibilities and the record as to why the actions resulting in the grant terminations and staffing reductions were taken, those actions were likely in violation of the APA and the Constitution.

The preliminary injunction enjoins the agency defendants from "implementing Section 2 of the [EO] as to IMLS, MBDA, and FMCS." It also orders those parties to "take all necessary steps to reverse any policies, memoranda, directives, or actions issued before [the preliminary injunction] that were designed or intended, in whole or in part, to implement, give effect to, comply with, or carry out the directives contained in [the EO] with respect to IMLS, MBDA, or FMCS."

The preliminary injunction provides that the agency defendants "shall not take any further actions to eliminate IMLS, MBDA, and FMCS pursuant to [the EO]." The District Court's preliminary injunction expressly provides, however, that it should not be construed "to preclude the Agency Defendants from taking actions that would improve Agency efficiency or reduce the size or scope of the Agency Defendants as long as (a) the Agency Defendant

provides a reasoned explanation for such action, and (b) the action will not prevent the Agency Defendant from fulfilling any of their statutory obligations."

The preliminary injunction provides that the agency defendants must "restore all IMLS, MBDA, and FMCS employees and personal service contractors, who were involuntarily placed on leave or involuntarily terminated due to the implementation of [the EO], to their status before March 14, 2025," although it made explicit that "[n]othing in [the preliminary injunction] precludes the Agency Defendants from making personnel decisions that are not related to or motivated by [the EO]."  The preliminary injunction also provides that the agency defendants are prohibited from "further paus[ing], cancel[ing], or otherwise terminat[ing] IMLS or MBDA grants or contracts or fail[ing] to disburse funds to recipients in plaintiff States according to such grants or contracts for reasons other than the grantees or contractors' non-compliances with applicable grant or contract terms."  Finally, the preliminary injunction requires the agency defendants to "take immediate steps to resume the processing, disbursement, and payment of already-awarded funding, and to release awarded funds previously withheld or rendered inaccessible due to or in reliance on Section 2 of the [EO] with respect to recipients in plaintiff States."

The District Court required the agency defendants to
file a status report within seven days of the preliminary
injunction confirming their compliance with the order issuing the
preliminary injunction or providing reasons for any
non-compliance. The agency defendants and the President
(collectively, the appellants) filed a notice of appeal. They
also requested that the District Court stay the preliminary
injunction pending resolution of the appeal. The District Court
denied the request. The appellants subsequently moved for a stay
of the preliminary injunction in this Court. In this opinion, we
address only the stay motion.

## II.

A stay pending appeal is an "intrusion into the ordinary
processes of administration and judicial review" and relief is not
granted as "a matter of right." New York v. Trump, 133 F.4th 51,
65 (1st Cir. 2025) (quoting Nken v. Holder, 556 U.S. 418, 427
(2009)). Accordingly, the appellants bear the burden of
demonstrating that they are entitled to the "extraordinary" relief
that they seek. Somerville Pub. Schs. v. McMahon, 139 F.4th 63,
68 (1st Cir. 2025).

We are guided by the now-familiar four factors set forth
in Nken:

> (1) whether the stay applicant has made a
> strong showing that he is likely to succeed on
> the merits; (2) whether the applicant will be

- 9 -

> irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

556 U.S. at 434 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).  The first two factors are "the most critical."  Id. "[W]e 'rely on the parties to frame the issues for decision.'" New York, 133 F.4th at 66 (quoting Greenlaw v. United States, 554 U.S. 237, 243 (2008)).

Before turning directly to the parties' arguments, we note that in Trump v. Boyle, 145 S. Ct. 2653 (2025), the Supreme Court of the United States explained that, although its "interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases."  Id. at 2654.  We note, too, that the Court has recently granted a stay in McMahon v. New York, 145 S. Ct. 2643 (2025) (mem.), which involved a preliminary injunction concerning an agency's decision to initiate large-scale employee terminations, and a partial stay in National Institutes of Health v. American Public Health Association, No. 25A103, 2025 WL 2415669 (U.S. Aug. 21, 2025) (per curiam), which involved an order that "vacat[ed] the Government's termination of various research-related grants," id. at *1.  We make the following observations up front about the potential bearing of the orders in those cases on our resolution of the stay request here.

**A.**

The Court's order in McMahon followed our own decision rejecting a request to stay the injunction in that case.  See Somerville Pub. Schs., 139 F.4th 63.  There, we addressed a variety of grounds that the appellants in that case -- the U.S. Department of Education ("DOE") and the Secretary of DOE, as well as the President -- had advanced as to why they were likely to succeed on the merits in their appeal of the preliminary injunction and why the equitable factors for securing a stay favored them.

We held that the appellants had failed to make the requisite "strong showing," Nken, 556 U.S. at 434, that they were likely to succeed on the merits of their appeal.  Somerville Pub. Schs., 139 F.4th at 76.  We further concluded that the equitable factors did not favor the appellants, in part because they had not met their burden with respect to their likelihood of success on the merits.  Id.

Following our denial of the stay request in McMahon, the appellants in that case moved for a stay in the Supreme Court. That stay request was pending in the Supreme Court while the stay request in this case was pending in our Court.  After the Supreme Court in McMahon requested a response from the plaintiffs to appellants' pending stay request, we decided to hold the stay request in this case in abeyance, given the possible relevance of the Supreme Court's resolution of the stay request in McMahon.

The Supreme Court's order to grant the stay in <u>McMahon</u> states in full:

> The application for stay presented to JUSTICE JACKSON and by her referred to the Court is granted. The May 22, 2025 preliminary injunction entered by the United States District Court for the District of Massachusetts, case No. 1:25-cv-10601, is stayed pending the disposition of the appeal in the United States Court of Appeals for the First Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought. Should certiorari be denied, this stay shall terminate automatically. In the event certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court.

145 S. Ct. at 2643.

It is not clear from this order which of the appellants' arguments for the stay request there led the Court to stay the preliminary injunction in that case. That is notable because the appellants in <u>McMahon</u> advanced arguments that the appellants here do not and those arguments could have been the basis for the Court's grant of the stay in <u>McMahon</u>.

For example, the appellants in <u>McMahon</u> argued that they were likely to succeed in showing that the plaintiffs lacked Article III standing in part by challenging as unduly speculative the district court's conclusion there that the reduction in force ("RIF") at issue in that case would disable the DOE, and therefore harm the plaintiffs as "beneficiaries" of the Department's services. Stay Appl. at 10, 15-18, <u>McMahon</u>, 145 S. Ct. 2643 (No.

24A1203).  The appellants here advance no such argument, as they do not dispute any of the plaintiffs' asserted harms in seeking the stay.

We emphasize as well that the appellants in <u>McMahon</u> disputed the district court's finding there that the RIF at issue had disabled DOE from performing the statutorily assigned functions by pointing to the fact that a large number of DOE employees remained.  <u>See</u> <u>id.</u> at 2-3, 14; <u>see also</u> <u>id.</u> at 2 (noting that "most of the pre-RIF workforce" remained).  Here, by contrast, the District Court found that nearly all the employees at the defendant agencies had been terminated, reassigned, or placed on administrative leave, and the appellants do not suggest otherwise.[1]

Given these and other differences between this case and <u>McMahon</u>, we cannot conclude from the Court's order in <u>McMahon</u> that this is a "like" case, such that we must grant the stay requested here because the Court granted one there.  <u>See</u> <u>Boyle</u>, 145 S. Ct. at 2654.  Indeed, a failure to advance an argument for a stay is

_____

[1] At IMLS, for example, the District Court found that only twelve employees remain, none of whom work in the Office of Research and Evaluation, "rendering [that office] essentially defunct."  And, at MBDA, the District Court found that the only five employees who were not placed on administrative leave were reassigned outside MBDA, leaving it with no active employees at all.  The District Court also found that FMCS placed on administrative leave and initiated a RIF to terminate all but ten to fifteen of its over 200 employees.

itself a reason not to grant the requested relief on the basis of that argument. See New York, 133 F.4th at 66 n.14. Accordingly, obliged as we are to treat each case on its own merits (and in light of the arguments made), we will proceed to assess whether a stay is required insofar as this case pertains to the agency-wide terminations of employees based on the arguments that have been advanced to us.

**B.**

In addition to our anticipation of guidance from the Court in McMahon, we also held this case in abeyance to await guidance offered by the Court in American Public Health Association. We did so because the appellants there raised to the Court in their stay request a number of arguments concerning the district court's decision as to the grant terminations at issue in that case that the appellants also raise to us here. Those arguments included not only the contention that the Tucker Act, 28 U.S.C. § 1491, divested the district court of jurisdiction to hear the APA claims raised in that suit, see Stay Appl. at 18-27, Am. Pub. Health Ass'n, 2025 WL 2415669 (No. 25A103), but also arguments as to the proper evaluation of the balance of the equities in a case concerning grant terminations, see id. at 37-38.

The Court ultimately granted the request for a stay in part in American Public Health Association. Specifically, the Court stayed the portions of the district court's orders in that

- 14 -

case that "vacat[ed] the Government's termination of various research grants," Am. Pub. Health Ass'n, 2025 WL 2415669 at *1, and left in place those portions of the district court's orders vacating related internal agency guidance, see id. A majority of the Court explained that it did so in part because it concluded that the Tucker Act likely posed a jurisdictional bar to the plaintiffs' APA claims insofar as those claims required the district court to "adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any '"obligation to pay money"' pursuant to those grants." Id. (quoting Dep't of Educ. v. California, 145 S. Ct. 966, 968 (2025) (per curiam)). And, further, the Court determined that the appellants faced irreparable harm insofar as the orders at issue compelled them to disburse funds that "'cannot be recouped' and are thus 'irrevocably expended.'" Id. (quoting Philip Morris USA Inc. v. Scott, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers)).

The appellants do advance similar Tucker Act and irreparable harm arguments here. Thus, in the analysis that ensues, we will address the relevance, if any, of the Court's partial stay in American Public Health Association to the appellants' request for a stay with respect to the portions of the preliminary injunction that address grant terminations.

### III.

We begin with the first Nken factor, which concerns the appellants' likelihood of success on the merits in their pending appeal.  The appellants argue that they are likely to succeed in showing -- as to the challenge to the terminations of employees, the failure to carry out statutorily assigned functions, and the decisions to implement across-the-board terminations of grants -- that the plaintiffs (1) have not met their burden to show that they have Article III standing and (2) have not shown that there is statutory subject matter jurisdiction over certain of their claims.  They separately contend that, even assuming that there is no jurisdictional bar to the plaintiffs' claims, the plaintiffs' APA claims fail on the merits because those claims fail to allege any "agency action" that is cognizable under the APA.  Finally, they contend that the District Court erred in basing the preliminary injunction on its determination that the plaintiffs' claims brought under the Constitution were likely to succeed on the merits, because constitutional claims of that sort are impermissible, in the appellants' view, under Dalton v. Specter, 511 U.S 462, 473 (1994).  Ultimately, for the reasons we will explain, the appellants' arguments fall short of the requisite "strong showing" that they are likely to succeed on the merits of their challenge to the preliminary injunction.

**A.**

We turn first to the appellants' arguments concerning the plaintiffs' Article III standing.  The appellants contend chiefly that the plaintiffs likely lack Article III standing because they are asserting a generalized interest in having the agency defendants perform their statutory duties rather than a "legally and judicially cognizable" harm or a sufficiently particularized injury.  (Quoting Raines v. Byrd, 521 U.S. 811, 819 (1997).)  But the complaint alleges that, with respect to the across-the-board policy to terminate grants, the plaintiffs have been and will continue to be injured by the denial of funds to which they are entitled, and that, with respect to the other challenged actions, they have been and will continue to be injured by the defendants' failure to provide services on which the plaintiffs rely.  Thus, the complaint does not allege that the plaintiffs will be injured simply by the Executive's general failure to adhere to the separation of powers in the abstract. See, e.g., Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" (quoting McGowan v. Maryland, 366 U.S. 420, 430-31 (1961))); cf. Crossroads Grassroots Pol'y Strategies v. FEC, 788 F.3d 312, 317 (D.C. Cir. 2015) (recognizing cognizable injury in fact "where a party benefits from" an agency's

actions and an adverse decision "would remove the party's benefit").

We note, too, that the appellants do not meaningfully dispute in their stay motion the District Court's findings that the losses of funding and services of which the plaintiffs complain have or will imminently occur due to the defendants' decisions. So, if the appellants are contending that the plaintiffs have not plausibly demonstrated an "injury in fact" for purposes of securing their Article III standing, Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992), they have not made a strong showing as to their likelihood of success, see Nken, 556 U.S. at 434.

Indeed, the appellants here, unlike the appellants in McMahon, do not argue that the plaintiffs "lack any non-speculative harm to support Article III standing," Stay Appl. at 14, McMahon, 145 S. Ct. 2643 (No. 24A1203), because their alleged injuries depend on attenuated chains of speculation, id. at 15-21. Nor do they contend with respect to Article III standing, as the appellants in McMahon did, that they are likely to succeed in showing that the plaintiffs' asserted injuries are not caused by the actions at issue, id. at 19, 24.

We note as well that, also unlike the appellants in McMahon, the appellants here do not argue that the plaintiffs' injuries are essentially "informational" and so not cognizable harms under TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), Stay

Appl. at 23-24, <u>McMahon</u>, 145 S. Ct. 2643 (No. 24A1203); that the plaintiffs have failed to establish a "statutory right to any particular level of government services," <u>id.</u> at 20-22; that the plaintiffs have no <u>parens patriae</u> standing to raise claims on behalf of their residents, <u>id.</u> at 24; or that many of the injuries of which the plaintiffs complain are "self-inflicted" and thus impermissibly "manufacture[d]" under <u>Clapper</u> v. <u>Amnesty Int'l USA</u>, 568 U.S. 398 (2013), Stay Appl. at 24-25, <u>McMahon</u>, 145 S. Ct. 2643 (No. 24A1203).

The appellants do contend that, "even if the plaintiffs have standing to challenge particular actions the agenc[ies] ha[ve] taken in implementing the Executive Order," they have such standing only to challenge those actions and terminations that "involve programs or grants on which the States allegedly rely." Accordingly, the appellants contend that they are likely to succeed in showing that the plaintiffs lack Article III standing because the plaintiffs cannot show that they were or imminently would be harmed by all such actions and terminations.

The District Court found, however, that the termination of the employees and other actions of the agency defendants that the preliminary injunction covers directly caused and will continue to cause the loss of services of which the plaintiffs complain. The appellants do not make any developed argument that this finding was clearly erroneous. See <u>Dep't of Com.</u> v. <u>New</u>

York, 588 U.S. 752, 767 (2019) (applying clear error review to district court's findings regarding the likely "result" of challenged government conduct and that such conduct would "lead to many of the [plaintiffs'] asserted injuries").  Nor do the appellants develop an argument that, even if the plaintiffs have Article III standing, the District Court abused its discretion because, by ordering the reinstatement of employees terminated pursuant to the agency defendants' implementation of the Executive Order, it ordered more relief than necessary.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 14 (1st Cir. 2000); Trump v. CASA, Inc., 145 S. Ct. 2540, 2549 n.2, 2549-50, 2562-63 (2025) (treating the question of whether an injunction is "broader than necessary to provide complete relief" as distinct from whether a plaintiff has "standing to sue").

**B.**

Having concluded that the appellants have not made a strong showing that they are likely to succeed in challenging the plaintiffs' Article III standing, we turn to their contentions as to the District Court's reasoning that the plaintiffs' claims were likely to succeed on the merits.  As we will explain, we need not address any of the appellants' arguments concerning the portions of the District Court's decision that address the plaintiffs' APA claims, because the appellants have failed to persuasively contest the District Court's grant of the preliminary injunction insofar

as it is based -- as it also is -- on the plaintiffs' constitutional claims.  We therefore need not address the appellants' contentions as to the plaintiffs' likelihood of success on their APA claims. Cf. Somerville Pub. Schs., 139 F.4th at 72 ("[W]e may bypass the appellants' contentions about the District Court's constitutional ruling because we conclude that the appellants have not met their 'strong showing' burden as to the District Court's APA ruling.").

The District Court held that, independent of the APA claims, the plaintiffs were likely to succeed in demonstrating that the agency defendants' actions violated the Take Care Clause of the Constitution and the constitutional separation of powers. The appellants raise two arguments -- apart from their contentions about Article III standing -- as to why the District Court erred in so holding.

The District Court so erred, the appellants first argue, because the plaintiffs' constitutional claims are "are little more than a repackaging of plaintiffs' alleged statutory violations." Drawing from Dalton, the appellants contend that such claims "'are not "constitutional" claims'" insofar as they simply "'alleg[e] that the President has exceeded his statutory authority.'" (Quoting Dalton, 511 U.S. at 473.)  The appellants additionally argue that the Civil Service Reform Act (CSRA), 5 U.S.C. §§ 7503-7515, divests the District Court of "jurisdiction to adjudicate the States' challenges to the federal agencies'

employment decisions," citing <u>Elgin</u> v. <u>Dep't of Treasury</u>, 567 U.S. 1 (2012). They make no argument that the Tucker Act precludes the District Court's jurisdiction over the plaintiffs' constitutional claims.

As the plaintiffs point out in their response, however, the appellants failed to raise their <u>Dalton</u> argument in their motion for a stay of the preliminary injunction before the District Court (or in their reply to the plaintiffs' opposition to that motion, for that matter). And, although the appellants reassert the argument in their reply brief to us, they make no attempt to argue that they raised this argument in their stay motion below or that their failure to raise this argument before the District Court should be excused. Nor did appellants raise their CSRA argument in their motion for stay of the preliminary injunction before the District Court or their reply to the plaintiffs' opposition.

The appellants' failure to raise these arguments to the District Court dooms their argument that they are likely to succeed on appeal in showing that the District Court erred in basing the preliminary injunction on the plaintiffs' likelihood of succeeding on their constitutional claims. <u>See</u> <u>New Jersey</u> v. <u>Trump</u>, 131 F.4th 27, 41-42 (1st Cir. 2025) (citing <u>Acevedo-García</u> v. <u>Vera-Monroig</u>, 296 F.3d 13, 17-18 (1st Cir. 2002), for the proposition that we decline to "consider arguments raised for first time in this court in support of stay pending appeal of preliminary

- 22 -

injunction").    "'[A]s a general rule, a disappointed litigant cannot surface an objection to a preliminary injunction for the first time in an appellate venue' because doing so deprives the district court of the opportunity to 'consider [the objection] and correct the injunction if necessary, without the need for appeal.'" Id. at 43 (alteration in original) (quoting Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 680 (1st Cir. 1998)); see also United States v. Lindsey, 3 F.4th 32, 40-41 (1st Cir. 2021).

This principle is especially important at this stage in the proceedings, on a motion for stay in the court of appeals, because Federal Rule of Appellate Procedure 8(a)(1)(A) ordinarily requires parties to move first for a stay in the district court before seeking relief in the court of appeals.   Allowing appellants in this court to rely on arguments that they did not make in their motion before the district court undermines that rule.   The appellants, represented by counsel, had several opportunities to raise this argument below, yet failed to do so, thus waiving it.   See Mullane v. U.S. Dep't of Just., 113 F.4th 123, 137 (1st. Cir. 2024) ("[W]e agree with the government that [plaintiff] ignored a viable opportunity to challenge the district court's jurisdictional analysis below . . . . [and] therefore forfeited his right to challenge that analysis on appeal.").

Of course, we have, on occasion, overlooked a failure to present an argument before the district court in certain

- 23 -

circumstances.  See, e.g., Menninger v. PPD Dev., L.P., 145 F.4th 126, 136-37, 136 n.5 (1st Cir. 2025) (explaining exceptions).  But this motion is particularly unsuited for such review; the appellants make no argument to excuse the failure -- indeed, they do not even acknowledge that the arguments were not raised below. The posture of this case, furthermore, weighs against relieving appellants of their obligation to present arguments to the district court in the first instance, as a stay pending appeal, after all, is "extraordinary relief."  New Jersey, 131 F.4th at 34.  And Rule 8 would have little import if we were to consider issues not raised in the first instance in the district court when no argument is even made to us for our doing so.

Because the appellants make no argument that the District Court's conclusion as to the plaintiffs' constitutional claims -- if correct under Dalton and the CSRA -- would not suffice to support the full scope of the preliminary injunction independent of the District Court's holdings as to the plaintiffs' APA claims, we cannot conclude that they have made a strong showing that they are likely to succeed on the merits of their appeal.  We further observe that we rejected appellants' seemingly identical CSRA argument in Somerville Public Schools, 139 F.4th at 71 ("[W]e are loath at this juncture of the proceedings to attribute to Congress the intention in enacting the CSRA . . . to bar every challenge to an unlawful effort by the Executive to shut down a statutorily

created agency by summarily firing its employees en masse . . . except for those specific challenges that the terminated employees themselves may choose to bring."), and nothing in McMahon indicates that we must now conclude otherwise, see McMahon, 145 S. Ct. at 2643.

## IV.

There remain the appellants' arguments about the three other Nken factors. See 556 U.S. at 434 (describing irreparable harm to the appellant, substantial injury to other parties interested in the proceeding, and the public interest as factors relevant to a stay request). As we will explain, those arguments fail to show that the appellants are entitled to a stay of the preliminary injunction.

## A.

As to irreparable harm, the appellants argue that the portions of the injunction directed at the "reinstate[ment]" of agency employees irreparably harm the appellants by requiring each of the agencies "to employ particular personnel against its will." They appear to contend that this requirement will so harm them in a number of ways.

First, the appellants contend that they will be irreparably harmed because the preliminary injunction allows the District Court, as to each agency, to "superintend[] its own judgment about requisite agency staffing," and to

"second-guess[] . . . every staffing decision the agencies make."
But we rejected a similar contention in Somerville Public Schools,
139 F.4th at 74-75, and the appellants do not provide any reason
that we should not do the same here.  Nor, for reasons described
at the outset, does the Supreme Court's order in McMahon require
a different conclusion.

Second, the appellants contend for the first time in
their reply brief that forcing them to employ particular personnel,
notwithstanding their desire to not do so, will "creat[e] workplace
tensions and affect[] agency administration."  The appellants do
not point to anything in the record, however, to support the
factual premise that the restoration of terminated employees in
fact will have such consequences.  We thus decline to credit this
contention as to irreparable harm.

Nonetheless, with respect to the portions of the
preliminary injunction that address grant terminations, the
appellants argue that they will separately be subject to
irreparable harm by having to disburse funds that may not be
recoverable if they later prevail on the merits.  They appear to
make this contention both with respect to the portion of the
preliminary injunction that ordered the restoration of grants as
well as that portion of it that prohibits the agency defendants
from, in the future, "paus[ing], cancel[ing], . . . otherwise
terminat[ing,] . . . or fail[ing] to disburse" grant funding "for

reasons other than the grantees or contractors' non-compliances with applicable grant or contract terms." The Supreme Court, for its part, has recognized this type of fiscal harm as an irreparable harm in the grant context. See Am. Pub. Health Ass'n., 2025 WL 2415669 at *1; California, 145 S. Ct. at 968-69; see also Somerville Pub. Schs., 139 F.4th at 75 (recognizing irreparable harm to the government where it may be required to pay employee salaries that could not later be recouped).

To be sure, the plaintiffs contend that the appellants' "own evidence states that grant payments ultimately found to be unwarranted may be recovered through 'debt collection procedures[.]'" But we do not see how the evidence to which the plaintiffs point can be read to undermine the appellants' contention in this respect.

We may also credit the appellants' contention that they will be irreparably harmed insofar as they are erroneously required to pay salaries to restored employees, because those funds would likely be "unrecoverable." Somerville Pub. Schs., 139 F.4th at 75. True, the appellants did not raise this argument in their opening brief, but, even if we overlook their having raised it only in their reply, our doing so would not affect the disposition of the present stay motion. See infra Part V.

- 27 -

**B.**

The appellants next contend that, under <u>Nken</u>'s third factor, the other parties interested in this proceeding -- here, the plaintiffs -- will not be substantially injured if the preliminary injunction is stayed pending appeal. They argue that "the gravamen of plaintiffs' injury [regarding grant restorations] is monetary -- the classic example of reparable harm." They further argue, with respect to the staffing reductions at issue, that "loss of government employment generally does not constitute irreparable injury, especially when there is a separate review scheme established by Congress to hear such claims."

The appellants do not develop any argument in support of their apparent premise that a harm must be irreparable to be substantial. But, in any event, the substantial harm that the plaintiffs allege with respect to the termination of employees is not the "loss of government employment" itself. It is the lost services that flow from the terminations' effective dismantling of each of the relevant agencies. And we have found analogous harms in the form of lost services flowing from an agency-wide RIF sufficient to demonstrate that plaintiffs faced substantial injury. <u>See</u> <u>Somerville Pub. Schs.</u>, 139 F.4th at 75.

The Supreme Court's order in <u>McMahon</u> is not to the contrary. The order in that case does not identify a lack of harm to the plaintiffs as a basis for the stay. In addition, the

- 28 -

appellants there -- unlike the appellants here -- argued that reinstatement of the terminated employees "has at best an attenuated impact on any specific services on which [the plaintiffs] allegedly rely." See Stay Appl. at 38, McMahon, 145 S. Ct. 2643 (No. 24A1203).

We note as well that the sole case on which appellants rely for the proposition that harms stemming from the loss of employment are not generally irreparable is Sampson v. Murray, 415 U.S. 61 (1974). But that case is not on point because it concerns only harms to the terminated employee. See id. at 62-63, 91-92 & n.68 (explaining that termination-related "loss of income," possible reputational damage, and "insufficiency of savings or difficulties in immediately obtaining other employment" "will not support a finding of irreparable injury, however severely they may affect a particular individual").

Moreover, although "traditional economic damages" are not generally thought of as "irreparable," "some economic losses can be deemed irreparable." Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009) (collecting cases). For example, we have recognized that harms to plaintiffs resulting from withheld grant funding -- including "the obligation of new debt; the inability to pay existing debt; impediments to planning, hiring, and operations; and disruptions to research projects by state universities" -- may be "irreparabl[e]" and so constitute

"substantial injury" under <u>Nken</u>'s third factor.  <u>See</u> <u>New York</u>, 133 F.4th at 73.

Here, the District Court found that the plaintiffs were likely to suffer irreparable harm stemming from the loss of grant funding.  Specifically, it found that plaintiffs and their agencies would have to "diminish" or "halt services," implement hiring freezes, "deny payments for contracted services," and "initiate layoffs" if they do not receive funding from the terminated grants.  Indeed, at least one plaintiff represented that one of its Business Centers "will close due to the termination" of its MBDA grant.  The appellants have not explained, in light of these findings, why the specific harms to the plaintiffs resulting from the loss of grant funding here do not constitute substantial injury.  <u>See</u> <u>Vaquería Tres Monjitas</u>, 587 F.3d at 485 (explaining that irreparable harm may be found "where the potential economic loss is so great as to threaten the existence of the movant's business" (quoting <u>Performance Unlimited, Inc.</u> v. <u>Questar Publishers, Inc.</u>, 52 F.3d 1373, 1382 (6th Cir. 1995))); <u>see also</u> <u>id.</u> (noting that, in a previous case, "we suggested that the inability to supply a full line of products may irreparably harm a merchant by shifting purchasers to other suppliers" (citing <u>Automatic Radio Mfg. Co.</u> v. <u>Ford Motor Co.</u>, 390 F.2d 113, 116-17 (1st Cir. 1968))).  And, although the appellants do not invoke it, we note that <u>California</u> cannot provide us any

guidance in this respect because, unlike here, the plaintiffs in that case, according to the Court, had "represented . . . that they have the financial wherewithal to keep their programs running."  145 S. Ct. at 969.

### C.

That leaves only the fourth Nken factor, which concerns "where the public interest lies."  556 U.S. at 434 (quoting Hilton, 481 U.S. at 776).  The appellants contend that, where the government is the party seeking a stay, Nken's second and fourth factors "merge."  For the reasons provided above, the appellants' arguments on this score only succeed to the limited extent that the appellants may not be able to recoup wrongfully disbursed funds at the close of litigation.  We have also previously explained, however, that "there is generally no public interest in the perpetuation of unlawful agency action," Somerville Pub. Schs., 139 F.4th at 76 (quoting League of Women Voters of the U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016)), especially where -- as here -- the appellants make no argument that their actions were legal on the merits, see New Jersey, 131 F.4th at 41.  Given these competing considerations, we conclude that the appellants have not met their burden to show that Nken's fourth factor favors the grant of a stay pending appeal in this case.

**V.**

While the appellants have established the possibility of some limited irreparable harm to themselves from the District Court's preliminary injunction, they have failed to (1) make a strong showing that they are likely to succeed on the merits of their appeal, (2) show that other parties interested in this litigation would not be substantially injured were we to issue the requested stay, or (3) show that the issuance of a stay is in the public interest.    We thus cannot conclude that the mere possibility of some limited irreparable harm to the appellants warrants the issuance of a stay.    See Somerville Pub. Schs., 139 F.4th at 76.

**VI.**

The motion for a stay is **denied**.