# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, *et al.*, | |
| Plaintiffs, | |
| v. | Case No.: 1:25-cv-00128-JJM-AEM |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| Defendants. | |

### PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION

Defendants are attempting to dismantle the Minority Business Development Agency (MBDA) in direct contravention of the preliminary injunction entered by the Court in this case. On October 10, 2025, Defendants initiated a Reduction in Force (RIF) that would incapacitate the MBDA and eliminate all its employees. The RIF notice mimics the language of the President's March 14, 2025 executive order and would carry out the directives of that executive order. The RIF therefore violates the plain terms of the Court's injunction and does not comport with the injunction's requirement that any action to reduce the size of the agency be supported by a reasoned explanation and not prevent the agency from fulfilling its statutory obligations. Defendants' latest actions demonstrate that further relief is needed to enforce the Court's injunction.

**A. Defendants Are Implementing a RIF That Contradicts This Court's Injunction.**

On October 10, 2025, employees at MBDA received a notice from the Department of Commerce informing them that the Department is implementing a RIF "based on the Department's plan to eliminate the discretionary functions of MBDA due to a lack of funding and because the discretionary functions of MBDA are not consistent with the Secretary's priorities." Exhibit A. The

notice makes clear the termination is not tied to any particular considerations regarding the impacted employees, as it states "[y]our separation through RIF procedures does not reflect on your service, performance, or conduct." *Id.* Instead, the notice states that "[t]he Department is abolishing all non-statutorily required positions performing discretionary functions within MBDA." *Id.* The RIF notice specifies it is effective December 9. *Id.*

An MBDA employee reports that their understanding is that all 24 of the MBDA's employees are being eliminated by the RIF. *See* Exhibit B, ¶ 7 (Doe Declaration). To that employee's knowledge, the only individual currently working at MBDA who did not receive such a notice is Kelly Mitchell, the agency's politically appointed Deputy Chief of Staff. *See id.* The MBDA could not fulfill its statutory functions if the RIF took effect. *See id.* ¶ 9.

The planned RIF conflicts with this Court's preliminary injunction. That injunction prohibits Defendants from "implementing Section 2 of the Executive Order 14238, 'Continuing the Reduction of the Federal Bureaucracy,' as to IMLS, MBDA, and FMCS," or from "tak[ing] any further actions to eliminate IMLS, MBDA, or FMCS pursuant to Executive Order 14238." ECF No. 60 ¶ 1 (attached hereto as Exhibit C). Section 2 of the President's March 14, 2025 Executive Order, titled "Continuing the Reduction of the Federal Bureaucracy," directed the MBDA and certain other agencies to eliminate their non-statutorily mandated functions "to the maximum extent consistent with applicable law," and to "reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law." Exec. Order No. 14,238 (Mar. 14, 2025) § 2(a) (attached hereto as Exhibit D). By its terms, the RIF notice carries out the policy directed by Section 2 of the executive order by purporting to eliminate all non-statutorily mandated functions and associated personnel at MBDA.

In addition, paragraph 4 of the preliminary injunction requires Agency Defendants to restore MBDA employees affected by the Executive Order to "their status before March 14, 2025," while also providing that the injunction does not "preclude[] the Agency Defendants from making personnel decisions that are not related to or motivated by Executive Order 14238." The RIF notice eliminates employees who were employed as of March 14, 2025. And, at minimum, it is manifestly "related to" the executive order, since it implements the same policy in almost the same terms. Indeed, the language and content of this RIF are closely similar to the RIF that MBDA attempted to carry out in April, which this Court held to be unlawful. *See* ECF No. 35-4 ¶ 4 (explaining that the previous RIF stated that "[t]his RIF action is based on the Department's plan to eliminate the non-statutory components and functions of MBDA").

### B. Defendants Cannot Invoke the Government Shutdown to Circumvent the Preliminary Injunction.

Defendants cannot invoke the government shutdown as a pretext for implementing the policies and directives of the executive order and engaging in the very conduct this Court already enjoined. The President's own public statements contradict any suggestion that the planned RIF stems from anything other than a policy of seeking to eliminate certain disfavored agencies, including the MBDA, as expressed in the March 14 executive order. On October 2, President Trump said he will soon meet with the director of the White House's Office of Management and Budget, "to determine which of the many Democrat Agencies, most of which are a political SCAM, he recommends to be cut." *See* Exhibit E; *see also* "Trump touts shutdown as 'unprecedented opportunity' to cut more Democratic priorities," CNBC (Oct. 2, 2025), https://www.cnbc.com/2025/10/02/trump-government-shutdown-updates-vought.html. "I can't believe the Radical Left Democrats gave me this unprecedented opportunity," he added. *Id.* These statements belie any contention that the targeted RIF at the MBDA is anything but an

3

implementation of the policy set forth in the President's March 14 executive order. It does not matter that additional disfavored "Democrat Agencies" that are not the subject of this case are also being targeted under the pretext of the shutdown. Regardless of what is taking place at other agencies, the MBDA is subject to the Court's injunction in this case, and Defendants' latest attempt to implement the policy of the executive order as to that agency is forbidden.

That is particularly so given that this Court's injunction was not limited to enjoining conduct that was expressly and explicitly carrying out the executive order. The injunction also specifically prohibits Defendants from "implement[ing], giv[ing] effect to, compl[ying] with, or carr[ying] out the directives contained" in the executive order. ECF 60 ¶ 2. Clearly, this Court's injunction did not intend to permit Defendants to circumvent the Court's order by carrying out the directives of the executive order as long as they did not expressly say they were implementing the executive order. No matter the garb in which this latest RIF is dressed, it is unmistakably "implement[ing], giv[ing] effect to, compl[ying] with, or carr[ying] out the directives contained" in the executive order. It strains credulity to suggest the policy being carried out here is not "related to" the executive order when it is the same policy implemented through the same means the agency initially attempted. *See Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019) (judges are "not required to exhibit a naivete from which ordinary citizens are free" (citation omitted)).

### C. The Planned RIF Does Not Comply with the Injunction's Proviso Regarding Permissible Agency Action.

Nor can Defendants justify their effort to circumvent the injunction based on the proviso in paragraph 3 of the Court's order. This paragraph provides that the Court's injunction does not prohibit the Defendants from "taking actions that would improve agency efficiency or reduce the size or scope of the Agency Defendants as long as (a) the Agency Defendant provides a reasoned explanation for such action, and (b) the action will not prevent the Agency Defendant from

4

fulfilling any of their statutory obligations." ECF No. 60 ¶ 3. This latest planned RIF comes nowhere near meeting either of those requirements.

*First*, the agency failed to "provide[] a reasoned explanation" for the action, in violation of paragraph 3 of the injunction. *See Michigan v. EPA*, 576 U.S. 743, 750 (2015) (APA requires agencies to engage in "reasoned decisionmaking"); *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'"). Before filing this Motion, Plaintiffs sent Defendants' counsel an email on October 10, 2025, explaining that the planned RIF violated this Court's injunction and asking Defendants to either rescind the RIF notices or explain their position as to why the RIF was consistent with the Court's injunction. Defendants responded on October 14, 2025, primarily by sending Plaintiffs a Department of Commerce "memorandum to file." *See* Exhibit F ("Dabbar Memorandum"). This memorandum is essentially a legal brief, couched as an agency memorandum, written for the sole stated purpose of explaining why the RIF does not violate this Court's injunction. *See id.* at 1. This memorandum does not provide any explanation as to why the agency believed a RIF was appropriate, why the agency believed the discretionary functions of MBDA should be eliminated, or why the agency believed the costs of such an action outweigh the benefits. Rather, it takes as its starting premise that a RIF will occur and simply provides legal arguments as to why the agency believes that action will not place it in violation of this Court's order. This memorandum therefore lacks the basic elements of reasoned decisionmaking and fails to satisfy the court's injunction for that reason. *See State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 at 43; *Michigan*, 576 U.S. at 758.

In any event, even taken on its own terms, the Dabbar Memorandum does not offer any plausible or reasoned justification for its assertion that the executive order is not the basis for the RIF. *See* Exhibit F at 1. Rather, the Dabbar Memorandum simply asserts, in conclusory fashion, that the RIF was motivated by the government shutdown and shortage of funds. *See id.* But the memorandum does not offer any explanation as to why the permanent elimination of all MBDA employees is a reasoned response to the current government shutdown or address why the drastic personnel action being taken is not limited or tied to the duration of the shutdown.

As recently observed by one federal court that enjoined a large swath of RIFs purportedly linked to the shutdown, "reductions in force ('RIFs') during a government shutdown are not 'ordinary' RIFs in any sense of the word." *Am. Fed'n of State County & Municipal Emps., AFL-CIO v. U.S. OMB*, No. 3:25-cv-08302-SI, slip op. at *1 (N.D. Cal. October 15, 2025). Citing the President's social media posts, the Court observed, "[i]t is also far from normal for an administration to fire line-level civilian employees during a government shutdown as a way to punish the opposing political party. But this is precisely what President Trump has announced he is doing." *Id*. at *2. Consistent with that Court's findings, Defendants' attempt in this case to link the dismantling of MBDA to the shutdown rings hollow.

The Dabbar Memorandum also fails to consider reliance interests that would be implicated by the RIF. As this Court determined in its preliminary injunction order, failure to consider reliance interests constitutes arbitrary and capricious agency action that violates the APA. *See* ECF No. 57, at 29–31 ("MBDA [has] failed to indicate that they considered any of the significant reliance interests of their program beneficiaries or grantees"). It is plain that the RIF of all 24 of the agency's employees would upset reliance interests to a significant degree. For instance, the Dabbar Memorandum states that the agency plans to eliminate all of the staff members who currently

6

administer MBDA grants and have their work instead performed by the Director of Business Centers—a position that is currently vacant. Exhibit F at 2; *see* Exhibit B, ¶10. Replacing an experienced staff of grant managers with a single inexperienced individual would substantially disrupt the work of MBDA business centers and other stakeholders. *See* Exhibit B, ¶ 13. Business centers rely on MBDA staff to ensure they are conforming to grant terms, to receive timely distributions of their grant funds, and to obtain technical assistance. *Id.* Immediately eliminating staff members that the business centers have relied on to perform this work would unsettle standard practice and substantially impact business centers' ability to carry out the terms of their grants. *Id.* By failing to consider these or other disruptions occasioned by the near-total abolition of the MBDA, the agency failed to engage in reasoned decisionmaking and thus violated paragraph 3 of the Court's injunction. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (citations omitted) ("When an agency changes course, as [MBDA] did here, it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account. It would be arbitrary and capricious to ignore such matters.").

*Second*, the RIF additionally violates paragraph 3 of the injunction as it would leave the MBDA unable to carry out its "statutory obligations." ECF No. 60 ¶ 3. As reflected in the Doe Declaration, the planned RIF is expected to eliminate all 24 of the employees at the MBDA. Exhibit B, ¶ 7. Just as with the initial RIF this Court enjoined, it is impossible for MBDA to continue to carry out its statutory functions with zero employees. For the same reasons this Court already found that the initial MBDA RIF rendered MBDA unable to carry out its statutory functions, the same holds true with this new RIF. *See* ECF No. 57, at 12–13 (discussing how MBDA RIF would render MBDA unable to carry out its functions).

The Dabbar Memorandum's contention that the MBDA could carry out its statutory functions with zero employes is neither supported nor credible.

The Dabbar Memorandum asserts that the RIF will not affect the statutorily required positions of Under Secretary and Director of Business Centers. Both of those positions, however, are currently vacant. As the agency is presently constituted, the RIF would leave only a single political appointee—Deputy Chief of Staff Mitchell—responsible for carrying out all of the functions of MBDA. Exhibit B, ¶ 10.

The Dabbar Memorandum also asserts that the Director of Business Centers alone can administer all 7 existing MBDA business center grants, which the memorandum estimates will require approximately 4 hours per grant per week. That assertion is not consistent with current or past practice at MBDA. *See id.* ¶ 11. Currently, nine full-time employees are responsible for servicing MBDA's existing grant portfolio. *Id.* That work includes managing data and ensuring adherence to grant specific requirements; providing direct support and strategic guidance to existing grantees on grant implementation and day-to-day operations; and providing technical assistance analyzing grant data to identify trends, developing recommendations for program improvement, and researching funding opportunities. *Id.* Carrying out these duties requires a specialized skillset, and existing MBDA employees have over fifty years of collective experience. In addition, these employees are assisted by a contractor, Corner Alliance, which has been awarded a contract to perform grant-related duties that MBDA employees would otherwise perform. *Id.* Collectively, this work is estimated to require a minimum of 20 hours per week per grant. *Id.* It is not feasible that a single individual could perform that work on their own. *Id.*

It is particularly unlikely that the Director of Business Centers could service all existing grants. As noted, that position is currently vacant. Even if an individual were detailed or appointed

to this position by the time the RIF took effect, that person would lack experience with administering MBDA grants and would need to develop familiarity with the business centers, grant terms, compliance standards, and other technical aspects of the agency's work. It is unlikely that such an individual could singlehandedly perform the work currently performed by nine experienced MBDA employees. *See id.* ¶ 12.

Furthermore, the Dabbar Memorandum does not acknowledge that, in addition to its 7 business center grants, MBDA currently administers 21 grants under the Capital Readiness Program, a technical assistance program to help underserved entrepreneurs grow and scale their businesses. *Id.* ¶ 14. The funds for these grants run through 2027. The Dabbar Memorandum does not explain how a single individual could administer all of these existing grants, nor does it suggest that the agency intends to terminate these grants (or that it could do so consistent with this Court's injunction).

The Dabbar Memorandum also asserts that the Director of Business Centers alone can ensure that the "information clearinghouse remains active." The information clearinghouse is not currently active. The website referenced in the memorandum, mbda.gov/research, has not been updated in several years, and does not include reports and datasets dating back to at least 2023. Given that the agency is not currently fulfilling this statutory obligation with a staff of 24 experienced employees, it is highly unlikely that a single inexperienced individual would be able to do so. *See id.* ¶ 14.

The Dabbar Memorandum acknowledges that the agency also is not currently fulfilling several other mandatory statutory duties, including establishing the Parren J. Mitchell grant program and establishing a rural business center program. Given that the agency is not fulfilling

9

these obligations with existing staff, it is exceedingly unlikely that a single appointee would do so. *See id.* ¶ 15.

Plaintiffs readily acknowledge that this Court's injunction permits Defendants to take personnel or agency actions related to the MBDA that are reasoned, compliant with the APA, independent of the March 14 executive order, and do not interfere with the MBDA's ability to carry out its statutory functions. But this RIF is none of those things.

### D. This Court Should Enforce the Injunction to Prevent the RIF.

This Court is empowered to enter "an injunction [that] will offer complete relief to the plaintiffs before the court." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (emphasis removed). "[E]quity has jurisdiction to afford complete relief," as "one of the basic functions of equity is to prevent a multiplicity of actions." *Angoff v. Goldfine*, 270 F.2d 185, 190–91 (1st Cir. 1959).

Here, this Court has already engaged in extensive analysis to determine that the Defendants' attempt to dismantle the MBDA is unlawful. The Court entered a thoughtful injunction that took into account Defendants' feedback and permitted the Agency Defendants to take actions to improve efficiency and reduce the size of the Agency so long as such action was not tied to carrying out the directives of the executive order and complied with the specific safeguards set forth in the injunction order. Defendants sought a stay of that injunction, which the First Circuit denied, finding that Defendants lacked a likelihood of success on their appeal. The planned RIF nonetheless seeks to carry out the directives of the executive order and fails to comply with the terms of the injunction. This Court already enjoined Defendants from implementing a disabling RIF that would decimate the MBDA. That existing injunction readily applies to bar Defendants' latest attempt to do what this Court already held to be unlawful.

10

## CONCLUSION

For the foregoing reasons, Plaintiffs request an order from this Court enforcing the preliminary injunction as to the planned RIF at MBDA.

Dated: October 17, 2025

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Katherine Connolly Sadeck*
Kathryn M. Sabatini (RI Bar No. 8486)
Chief, Civil Division
Special Assistant Attorney General
Katherine Connolly Sadeck (RI Bar No. 8637)
Solicitor General
Assistant Attorney General
Natalya A. Buckler (RI Bar No. 8415)
Assistant Attorney General
Paul Meosky (RI Bar No. 10742)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Phone: (401) 274-4400
Fax: (401) 222-2995
ksabatini@riag.ri.gov
ksadeck@riag.ri.gov
nbuckler@riag.ri.gov
pmeosky@riag.ri.gov
*Attorneys for the State of Rhode Island*

Respectfully submitted,

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Abigail Katowitz-Liu*
Abigail Katowitz-Liu
Assistant Attorney General
Rabia Muqaddam
Special Counsel for Federal Initiatives
Sean Bunny
Assistant Attorney General
28 Liberty St.
New York, NY 10005
(212) 416-8922
Abigail.katowitz-liu@ag.ny.gov
Rabia.muqaddam@ag.ny.gov
Sean.bunny@ag.ny.gov
*Attorneys for the State of New York*

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

**KRISTIN K. MAYES**
Attorney General
State of Arizona

*/s/ Syreeta A. Tyrell*
Syreeta A. Tyrell
Senior Litigation Counsel
2005 North Central Avenue
Phoenix, Arizona 85004
Phone: (602) 542-3333
Syreeta.Tyrell@azag.gov
ACL@azag.gov
*Attorneys for the State of Arizona*

**ROB BONTA**
ATTORNEY GENERAL OF
CALIFORNIA

*/s/ Jay C. Russell*
Jay C. Russell
Deputy Attorney General
Thomas S. Patterson
Senior Assistant Attorney General
Zelda Vassar
Deputy Attorney General
California Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3617
Jay.Russell@doj.ca.gov
Zelda.Vassar@doj.ca.gov
*Counsel for the State of California*

**PHILIP J. WEISER**
Attorney General of Colorado

By: */s/ David Moskowitz*
David Moskowitz
*Deputy Solicitor General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000new
David.Moskowitz@coag.gov

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Ashley Meskill*
Ashley Meskill
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
Phone: (860) 808 5270
Ashley.Meskill@ct.gov

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: */s/ Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
VANESSA L. KASSAB
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

**KWAME RAOUL**
Attorney General of Illinois

*/s/ Holly F.B. Berlin*
HOLLY F.B. BERLIN
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-3000
holly.berlin@ilag.gov
Counsel for the State of Illinois

**AARON M. FREY**
Attorney General for
the State of Maine

/s/ *Vivian A. Mikhail*
Vivian A. Mikhail
Deputy Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
Tel.:  207-626-8800
Fax:  207-287-3145
Vivian.Mikhail@maine.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: /s/ *Keith M. Jamieson*
Keith M. Jamieson
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
(410) 576-6960
kjamieson@oag.state.md.us
*Attorneys for the State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

/s/ *Katherine Dirks*
Katherine Dirks
*Chief State Trial Counsel*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
*Attorney for the State of Massachusetts*

**DANA NESSEL**
Attorney General for the People of Michigan

/s/ *Neil Giovanatti*
Neil Giovanatti
BreAnna Listermann
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
ListermannB@michigan.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: /s/ *Jacob Harris*
Jacob Harris
Assistant Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
(651) 757-1156
Jacob.Harris@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

By: /s/ *Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

**MATTHEW J. PLATKIN**
Attorney General of New Jersey

/s/ *Joshua Bohn*
Joshua Bohn
  *Deputy Attorney General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(609) 696-5366
Joshua.Bohn@law.njoag.gov
*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General of New Mexico

/s/ *Anjana Samant*
Anjana Samant
Deputy Counsel for Impact Litigation
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
asamant@nmdoj.gov
Attorney for Plaintiff State of New Mexico

**DAN RAYFIELD**
Attorney General for the State of Oregon

/s/ *Brian Simmonds Marshall*
Brian Simmonds Marshall
*Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
(971) 673-1880
brian.s.marshall@doj.oregon.gov
*Attorneys for the State of Oregon*

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: /s/ *Ryan P. Kane*
Ryan P. Kane
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

/s/ *Kate S. Worthington*
Kate S. Worthington, WSBA #47556
Sarah E. Smith-Levy, WSBA #55770
Assistant Attorneys General
7141 Cleanwater Drive SW
P.O. Box 40111
Olympia, WA 98504-0111
(306) 709-6470
kate.worthington@atg.wa.gov
sarah.e.smith-levy@atg.wa.gov
Attorneys for Plaintiff State of Washington

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

/s/ *Colin T. Roth*
COLIN T. ROTH
Assistant Attorney General
WI State Bar #1103985
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7636
rothct1@doj.state.wi.us
Attorney for Plaintiff State of Wisconsin

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I filed the within via the ECF filing system and that a copy is available for viewing and downloading. I also caused a copy to be sent via the ECF System to counsel of record on this 17th day of October, 2025.

<i><u>/s/ Katherine Connolly Sadeck</u></i>