# EXHIBIT F

| | |
|---|---|
| **FROM:** | Paul Dabbar, Deputy Secretary of the Department of Commerce  *[signature]* |
| **TO:** | FILE |
| **DATE:** | October 10, 2025 |
| **RE:** | Reduction in Force of Minority Business Development Agency Positions |

The Department of Commerce ("Department") is considering reductions in force ("RIF(s)"), including of certain Minority Business Development Agency ("MBDA") positions. On May 13, 2025, in *Rhode Island et al. v. MBDA*, the U.S. District Court for the District of Rhode Island issued a preliminary injunction prohibiting the Secretary from taking any further action in response to Executive Order 14238, *Continuing the Reduction of the Federal Bureaucracy* ("EO 14238"). The court's order states that "[n]othing in this Order precludes the Agency Defendants from making personnel decisions that are not related to or motivated by Executive Order 14238." It further provides:

> Nothing in this Order shall be construed to preclude the Agency Defendants from taking actions that would improve Agency efficiency or reduce the size or scope of the Agency Defendants as long as (a) the Agency Defendant provides a reasoned explanation for such action, and (b) the action will not prevent the Agency Defendant from fulfilling any of their statutory obligations.

For the reasons explained below, the RIF of certain MBDA positions is not related to or motivated by EO 14238 and will not prevent the Department from fulfilling MBDA's statutory obligations.

### I. The RIF is not related to or motivated by EO 14238.

The Department's RIF of MBDA positions is related to the lapse in federal funding—not EO 14328. 5 CFR § 351.201 provides that positions may be RIF'd due to a "shortage of funds." 5 CFR § 351.201(a)(2). MBDA's annual funding lapsed on October 1, 2025. Therefore, there is a shortage of funds for MBDA. That alone is sufficient reason for proceeding with the RIF that is unrelated to and unmotivated by EO 14328.[1] Moreover, proceeding with a RIF of MBDA is consistent with the other RIFs by the Department.

### II. The RIF will not prevent the Department from fulfilling its statutory obligations.

MBDA's statutory obligations are limited to:

---

[1] The Minority Business Development Act (the "Act"), which codified the MBDA, provides that the MBDA Business Center Program's purpose is to "assist minority business enterprises." 15 USC § 9522. "Minority Business Enterprise" is defined as a business enterprise that is majority owned and controlled by "socially or economically disadvantaged individuals." *Id.* § 9501(9)(A). In determining whether someone is a "socially or economically disadvantaged individual," the Act directs the MBDA to presume that a person who is a racial minority meets that definition. In *Nuziard v. MBDA*, a federal district court in Texas struck down this race-based presumption.

1. Maintaining the positions of Under Secretary and Director of Business Centers, 15 U.S.C. §§ 9502(b), 9502(d)(2);
2. Establishing and maintaining at least one business center grant, *id.* § 9502;
3. Establishing and maintaining the information clearinghouse, *id.* § 9513(b);
4. Conduct an annual business forum, *id.* § 9541;
5. Establishing the Minority Business Enterprises Advisory Council, *id.* § 9571;
6. Awarding grants to eligible institutions to develop and implement entrepreneurship curricula, *id.* § 9543 (Parren J. Mitchell scholarships); and
7. Awarding Rural Business Center Grants, *id.* §§ 9512, 9598.

The RIF under consideration will not prevent the MBDA from fulfilling any of these obligations.

1. Statutory Positions.

As an initial matter, the RIF will not affect the statutorily required positions for persons who will perform the statutory functions. The statute mandates only two positions at MBDA: the Under Secretary, 15 USC 9502(b); and the Director of Business Centers, *id.* 9502(d)(2). Neither of those positions will be RIF'd.

2. Establishing and Maintaining At Least One Business Center Grant.

The remaining MBDA staff can maintain the current business center grants. Currently, there are 7 business centers operating with MBDA grants. These business centers largely function independently without direction from the MBDA. MBDA's continued operation of the business center program is limited to ensuring compliance with the grantees' award conditions. This work entails tracking a recipient's progress against stated program goals, comparing the actual accomplishments with the goals and objectives established in the award, and advising the Grants Officer—within the National Institute of Standards and Technology ("NIST")—on programmatic aspects of the awards.[2] The Director of Business Centers alone can perform this compliance work, which generally requires monthly check-ins with recipients, semiannual and annual performance progress reviews, and semiannual and annual SF-425 federal financial report reviews—altogether approximately four hours per week per grant (28 hours). To the extent the statutory scheme requires more than one business center, that Director can provide necessary oversight and management. Moreover, while the monitoring and analysis work is inherently governmental, MBDA has ample contractor resources available for collection, processing, and other administrative support needed for these monitoring activities. Contractors can support with recipient communications, scheduling, follow up, receipt of information, and general records sorting, allowing the Director

---

[2] https://www.commerce.gov/sites/default/files/2025-04/Department%20of%20Commerce%20Federal%20Financial%20Assistance%20Manual%202024%20IC1%20dated%20March%2031%2C%202025.pdf.

of Business Centers to do the actual compliance work. MBDA currently has a contract with Corner Alliance to perform this work.

3. Information Clearinghouse.

The Director of Business Centers alone can also ensure the information clearinghouse remains active. MBDA's Research Library remains active and available to the public online at https://www.mbda.gov/research, providing access to all available MBDA reports and datasets.[3] There is little to no effort required by the Director of Business Centers to ensure the website remains functional. The Department's Chief Information Office can provide technical assistance as needed.

4. Annual Forum.

The Director of Business Centers can also organize the annual forum. The statute requires the Under Secretary to invite certain people and groups to the forum and distribute a summary of its proceedings but otherwise does not specify the operation of the forum. 15 U.S.C. §§ 9541(b), (d). The Director of Business Centers can organize this annual forum—which can be any format (in-person or virtual), any size (so long as certain people are invited), and any length.

5. Advisory Council.

The advisory council has already been established, so there is no work to be done there.[4]

6. Parren J. Mitchell Grants.

Since it was codified in 2021, the MBDA never established the Parren J. Mitchell grant program and therefore no grants have been awarded pursuant to that statutory provision, including during the Biden Administration. To require MBDA to do so now would be putting an affirmative obligation on MBDA that would depart from even what the Biden Administration was doing and go beyond the status quo. Still, if necessary, there would be sufficient staff at MBDA after the RIF to establish this program, with the assistance of NIST staff for logistical assistance, subject to funding availability.[5]

7. Rural Business Center Grants.

---

[3] Related to the information clearinghouse, 15 U.S.C. § 9513(a) generally requires the Under Secretary to collect data, conduct research, and provide outreach in multiple languages. The MBDA has previously done this work, which is available on the referenced website.

[4] The advisory council will terminate in November 2026 by statute. *See* 15 U.S.C. § 8573(c)).

[5] There are some additional statutory requirements that have already been fulfilled, *e.g.* reports to Congress, *see* 9502(c) and issuing regulations, *see* § 9524(i).

Similarly, since it was codified in 2021, the MBDA never established a rural business center program and therefore no grants have been awarded pursuant to that statutory provision, including during the Biden Administration.[6] To require MBDA to do so now would be putting an affirmative obligation on MBDA that would depart from even what the Biden Administration was doing and go beyond the status quo. Still, if necessary, there would be sufficient staff at MBDA after the RIF to establish this program, with the assistance of NIST staff for logistical assistance, subject to funding availability.[7]

---

[6] Some provisions suggest the rural business center program is discretionary. *See* 15 USC § 9552(a) ("the Under Secretary *may* establish MBDA Rural Business Centers") (emphasis added). Still, other provisions suggest it is mandatory. *See id.* § 9598(2) ("$20,000,000 shall be used in each such fiscal year to carry out subchapter III [the Rural Business Center Program).

[7] The statute also sets forth discretionary actions the MBDA may undertake, such as (1) establishing additional offices within MBDA, 15 USC § 9502(e)(1), (2) establishing regional offices, *id.* § 9502(e)(2), (3) engaging in "private sector development" of MBEs, *id.* § 9511 ("The Under Secretary shall, whenever the Under Secretary determines such action is necessary or appropriate ..."), (3) engaging in "public sector development" of MBEs, *id.* § 9512 ("The Under Secretary shall, whenever the Under Secretary determines such action is necessary or appropriate . .."), (4) providing training for business centers, requiring business center management attend conferences, facilitate connections between business centers, monitor business centers' projects, *id.* § 9524(h) ("The Under Secretary may take actions to ensure that the Agency is substantially involved in the activities of Centers . . ."), and (5) engaging in educational development, *id.* § 9543(a) ("The Under Secretary shall, whenever the Under Secretary determines such action is necessary or appropriate ...").

4