IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STATE OF RHODE ISLAND, *et al.*,

    Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

    Defendants.

No. 25-cv-00128

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION TO ENFORCE PRELIMINARY INJUNCTION**

    Plaintiffs move to enforce this Court's May 13, 2025 preliminary injunction against reduction in force ("RIF") notices issued to 23 employees of the Minority Business Development Agency ("MBDA") as part of Government- and Department-wide shutdown reductions. ECF No. 88. But Plaintiffs seek to enforce the terms of some hypothetical preliminary injunction—not the terms of the preliminary injunction actually issued by this Court six months ago. This Court's preliminary injunction was plain: MBDA, consistent with its statutory duties and requirements, may still take actions to improve efficiency or reduce its size or scope with a "reasoned explanation" and "mak[e] personnel decisions that are not related to or motivated by Executive Order 14238." ECF No. 60 ¶¶ 3–4; *see* Exec. Order 14238, 90 Fed. Reg. 13043 (Mar. 14, 2025). That is precisely what MBDA has done here.

    ***First***, MBDA provided a "reasoned explanation" entirely unconnected to Executive Order 14238: (1) "due to a lack of funding" under 5 C.F.R. § 351.201(a)(2), and (2) "because the discretionary functions of MBDA are not consistent with the Secretary's priorities." ECF No. 88-

1

1 at 2 (Redacted RIF Notice). Plaintiffs cannot manufacture pretext where none exists—especially when such MBDA RIFs occurred in conjunction with others across the federal government and the Department of Commerce itself. And *second*, adhering to the Court's preliminary injunction, MBDA issued a contemporaneous internal memorandum from Deputy Secretary of Commerce Paul Dabbar (the "Dabbar Memorandum") explaining how the RIFs would be consistent with its statutory responsibilities and functions. ECF No. 88-6 at 1. Yet even in its new and condensed form, MBDA currently *exceeds* its statutory obligations through its Capital Readiness Program, whose discretionary grants Plaintiffs concede remain in effect. Plaintiffs know all of this and still misstate the facts about MBDA's continued operation—wrongly claiming there are no employees at MBDA and grossly exaggerating the amount of work necessary for its operation, among other errors.

Because these MBDA RIFs are consistent with the preliminary injunction, this Court should deny Plaintiffs' motion. But at a minimum, it should hold the motion in abeyance because the RIFs in question are currently enjoined by an independent preliminary injunction order issued by a district court in the Northern District of California. *Am. Fed. of Gov't Emp. v. Office of Mgmt. and Budget*, No. 25-cv-08302, ECF Nos. 56, 70 (N.D. Cal. 2025).

**I.     The Court's Preliminary Injunction Permits the MBDA RIFs.**

This Court's preliminary injunction order enjoins MBDA "from implementing Section 2 of . . . Executive Order 14238," which mandated the reduction of MBDA programs and staff to its statutory components and functions. ECF No. 60 ¶ 1; *see also* Exec. Order. 14238, 90 Fed. Reg. at 13043. But the preliminary injunction also made clear that MBDA could "mak[e] personnel decisions that are *not related to or motivated by Executive Order 14238*." ECF No. 60 ¶ 4 (emphasis added). It also expressly declared that "[n]othing in this Order shall be construed to preclude the Agency Defendants from taking actions that would improve Agency efficiency or

2

reduce the size or scope of the Agency Defendants as long as (a) the Agency Defendant provides a reasoned explanation for such action, and (b) the action will not prevent the Agency Defendant from fulfilling any of their statutory obligations." *Id.* ¶ 3. MBDA has done just that with the RIF Notices and the Dabbar Memorandum that accompanied them.

### A. MBDA Provided a "Reasoned Explanation" For Its RIF Notices.

To begin, the basis for these RIFs—or the "reasoned explanation" required by the preliminary injunction—has been clear from the outset. Before any lapse in appropriations, the Office of Management and Budget generally directed federal agencies, including the Department of Commerce, to review the RIF regulations to determine whether organizational units subject to a shortage of funds were also inconsistent with agency priorities. *Am. Fed. of Gov't Emp.*, No. 25-cv-08302, ECF No. 1-1 (OMB Lapse Memorandum). The Department of Commerce did so and identified MBDA, among other bureaus. After that review, the Department of Commerce then issued the RIF Notices to 23 MBDA employees and provided a "reasoned explanation" for such a reduction, consistent with the preliminary injunction, based on two grounds: (1) "a lack of funding" under 5 C.F.R. § 351.201(a)(2), and (2) "because the discretionary functions of MBDA are not consistent with the Secretary's priorities." ECF No. 88-1 at 2 (Redacted RIF Notice); *see* ECF No. 88-6 at 1 (Dabbar Memorandum explaining same).

*First*, the lapse in MBDA's appropriations justifies a RIF under 5 C.F.R. § 351.201—and likewise suffices for a "reasoned explanation" under the preliminary injunction. That is largely because of long-established authority granting agencies' broad discretion when determining whether a RIF is warranted. For example, 5 C.F.R. § 351.201 states in relevant part that "[e]ach agency is responsible for determining the categories within which positions are required, where they are to be located, and when they are to be filled, abolished, or vacated." *Id.* § 351.201(a)(1).

This discretion "includes determining when there is a surplus of employees at a particular location in a particular line of work." *Id.* And § 351.204 emphasizes that "[e]ach agency covered by this part is responsible for following and applying the[se] regulations . . . *when the agency determines that a reduction [in] force is necessary*." *Id.* § 351.204 (emphasis added). Such significant leeway in internal agency composition is also consistent with established case law recognizing that such reduction decisions are committed to Executive discretion. *See*, *e.g.*, *Gandola v. FTC*, 773 F.2d 308, 311 (Fed. Cir. 1985) (explaining that a "decision on the composition and structure of the work force reflects the kind of managerial judgment that is the essence of agency discretion, and is not meet for judicial reevaluation"). Whatever the measure, Plaintiffs do not—and indeed cannot—dispute either this discretionary authority based on a "shortage of funds" or that the government-wide shutdown has, in fact, yielded a shortage. *See* ECF No. 88-6 at 2. That is unsurprising. If the regulations expressly permit reductions when such a context exists, as it does here, then invoking this authority constitutes a more than sufficiently "reasoned explanation."

**Second**, even beyond a "shortage of funds," the MBDA RIFs also reflect a "reasoned explanation" by referencing and implementing the Secretary's priorities. The Secretary has stressed from the start of his tenure that the federal government must be a responsible steward of public funding. *See* Connor McCulloch, *5 Key Takeaways from the Confirmation Hearing of Secretary of Commerce Nominee Howard Lutnick*, Ankura (Feb. 3, 2025), https://angle.ankura.com/post/102jxvg/5-key-takeaways-from-the-confirmation-hearing-of-secretary-of-commerce-nominee-ho (summarizing the Secretary's confirmation testimony, which emphasized the importance of executing Department programs in an efficient and cost-effective manner and striving to give Congress "the benefit of the bargain"). Effectuating that priority, in or around June 2025, and well after the Court's preliminary injunction issued, MBDA conducted

4

a review of its programs and discovered that 14 MBDA grant recipients had reached poor or unacceptable performance levels under the applicable notices of funding opportunities ("NOFO"). *See* Ex. A (NOFO MBDA-OBD-2021-2006809); Ex. B (NOFO MBDA-OBD-2022-207282). MBDA's review culminated in the non-continuation of these underperforming business centers, as permitted by the NOFOs and applicable law. *See* Ex. A (NOFO MBDA-OBD-2021-2006809) at 9 ("Receipt of any prospective funding also is contingent upon . . . satisfactory performance . . . and will be at the sole discretion of the Department of Commerce."); Ex. B (NOFO MBDA-OBD-2022-2007282) at 7 (same); *see also* Ex. C (Award Document for MBDA Award No. MB21OBD8050196) at 4 ("Receipt of any prospective funding is contingent upon the availability of funds from Congress, satisfactory performance, continued relevance to program objectives, and will be at the sole discretion of the Department of Commerce."). Those actions ultimately reduced the total business centers grants in Plaintiff states from 21 to 7. *See generally* Ex. D (6/13/25, B. Marks Mem. to C. Andrade). And on top of all that, MBDA had already terminated 25 business centers in non-Plaintiff states not subject to this Court's preliminary injunction—as Plaintiffs expressly agreed. *See, e.g.*, Ex. E (4/2/25 MBDA Award No. MB21OBD8050196 Termination Notice); Ex. F at 1 (5/19/25 N. Buckler Email to H. Gonzalez) ("We share your understanding of the [Court's preliminary injunction] order.").

This is to say nothing of the reduced workload of MBDA's Capital Readiness Program ("CRP"), a non-statutory MBDA program that currently remains in effect even after other changes. Ex. G (MBDA Capital Readiness Program NOFO MBDA-OBD-2023-2007775) at 8. For one thing, MBDA reduced 43 CRP grants to just 22 CRP grants, leaving remaining those in Plaintiff states consistent with the preliminary injunction. *See* Ex. F at 2 (5/19/25 N. Buckler Email to H. Gonzalez) ("We share your understanding of the [Court's preliminary injunction] order."). And

5

for another, all MBDA must do now for any remining CRP grants is simply approve or disapprove of their drawdowns from a programmatic perspective because all the CRP money (approximately $62 million) has already been obligated to grantees. *See* Ex. G at 14 ("MBDA expects to obligate the full amount of the award in year one[.]"); *see, e.g.*, Ex. H (10/29/2025 Business Outreach Ctr. Network, Inc. ASAP.gov Account Settlement Report). Put another way, MBDA staff have a limited CRP workload across its portfolio. In light of that fundamentally changed workload, the Department examined the number of staff required and determined that 23 positions should be eliminated. That determination is an agency-specific reflection of Secretarial priorities wholly unrelated to Executive Order 14238.

Against all this, Plaintiffs adduce no concrete evidence of pretext whatsoever. *See* ECF No. 88 at 3–4. MBDA's RIF Notices make no mention of Executive Order 14238. Nor do they even express the President's policy position on MBDA. In fact, the Dabbar Memorandum, issued in conjunction with the MBDA RIFs, expressly *disclaimed* any tie to Executive Order 14238, noting that the "RIF of certain MBDA positions is not related to or motivated by EO 14238." ECF No. 88-6 at 2. To remove any doubt, the Dabbar Memorandum reiterated that "there is a shortage of funds for MBDA," which "is sufficient reason for proceeding with the RIF that is unrelated to and unmotivated by EO 14328." *Id.* (footnote omitted). Nonetheless, Plaintiffs proffer certain social media posts and other media statements concerning "Democrat Agencies" as purportedly probative of MBDA's efforts to effectuate Executive Order 14238 by any other name. *See* ECF No. 88 at 3–4.

Such material, however, is far too thin a reed to support Plaintiffs' allegations of pretext. Nowhere in those posts or statements is Executive Order 14238 mentioned, its requirements alluded to, or its implementation requested. Even then, Plaintiffs claim—without evidence or

6

explanation—that "[t]he RIF notice mimics the language of the President's March 14, 2025 executive order." ECF No. 88 at 1. But the Department of Commerce uses the same sort of RIF notice template, with slight variation, across each of its RIFs. *See* Ex. I (Redacted Census RIF Notice). And finally, perhaps the best evidence against pretext is that, although Executive Order 14238 directed the Department to reduce MBDA's performance of its "statutory functions and associated personnel to the minimum presence and function required by law," 90 Fed. Reg. at 13043, these MBDA RIFs do not achieve that result. MBDA is instead performing both statutorily required and non-statutory functions alike, including the Capital Readiness Program. This Court should therefore reject Plaintiffs' invitation to broaden the preliminary injunction to cover *any* reduction in MBDA's personnel and non-statutory functions—as that is simply not what the Court's order says. To hold otherwise would be to forever ossify MBDA at a level above and beyond what is required by statute, despite such a pronouncement appearing nowhere in the preliminary injunction.

    The reality is that these MBDA RIFs occurred in conjunction with RIFs across the Department of Commerce and the federal government. Indeed, other bureaus within the Department of Commerce conducted RIFs as part of the shutdown, including the Census Bureau, NTIA, the International Trade Administration, and the Bureau of Industry and Security. *See, e.g.*, Ex. I (Redacted Census RIF Notice). And so did other agencies across the federal government, including the Departments of Education, Health and Human Services, Housing and Urban Affairs, Homeland Security, and Treasury. *See Am. Fed. of Gov't Emp.*, No. 25-cv-08302, ECF No. 79-1 at 14. If MBDA were truly "implement[ing], giv[ing] effect to, compl[ying] with, or carr[ying] out the directives contained" in Executive Order 14238 here as Plaintiffs claim, ECF No. 88 at 4 (alterations in original), it is difficult to imagine why other RIFs were conducted across the federal

7

government and the Department of Commerce *during and as result of the* same lapse of appropriations—some six months after the issuance of the Executive Order.

### B. MBDA Will Fulfill Its Statutory Obligations After RIFs.

In addition to providing a "reasoned explanation" for its RIFs, MBDA also explained how it would adhere to statutory requirements after such RIFs as required by the preliminary injunction. That explanation came through the Dabbar Memorandum, which identifies with precision the following seven statutory obligations imposed upon MBDA and extensively details how the RIFs will not affect each discrete responsibility:

1. Maintaining the positions of Under Secretary and Director of Business Centers, 15 U.S.C. §§ 9502(b), 9502(d)(2);
2. Establishing and maintaining at least one business center grant, *id.* § 9502;
3. Establishing and maintaining the information clearinghouse, *id.* § 9513(b);
4. Conduct[ing] an annual business forum, *id.* § 9541;
5. Establishing the Minority Business Enterprises Advisory Council, *id.* § 9571;
6. Awarding grants to eligible institutions to develop and implement entrepreneurship curricula, *id.* § 9543 (Parren J. Mitchell scholarships); and
7. Awarding Rural Business Center Grants, *id.* §§ 9512, 9598.

ECF No. 88-6 at 3. Plaintiffs do not dispute that this list encompasses the entirety of MBDA's statutory obligations; rather, relying primarily upon *ipse dixit* assertions and an anonymous Declaration, *see* ECF No. 88-2, they maintain that MBDA will be unable to fulfill the above statutory responsibilities following the RIFs. These contentions are baseless.

Start with Plaintiffs' repeated assertion that MBDA has no employees. ECF No. 88 at 1–2, 6–7; ECF No. 88-2 ¶ 7. As the Dabbar Memorandum explains, the relevant "statute mandates only two positions at MBDA: the Under Secretary, 15 [U.S.C. §] 9502(b); and the Director of Business Centers, *id.* [§] 9502(d)(2)," and "[n]either of those positions will be RIF'd." ECF No. 88-6 at 3. Plaintiffs nevertheless assert that "it is impossible for MBDA to continue to

8

carry out its statutory functions with zero employees" and that these two positions are "currently vacant." ECF No. 88 at 7; ECF No. 88-2 ¶ 10. That is simply incorrect. In conjunction with the MBDA RIFs, the Department of Commerce reassigned Kelly Mitchell to serve as Director of Business Centers on October 10, 2025. Ex. J. (10/10/25 Z. Walz Email to K. Mitchell).[1] And since March 14, 2025, Deputy Secretary of Labor Keith Sonderling has served as acting Under Secretary of Commerce for Minority Business Development, under his designation as an acting officer under the Federal Vacancies Reform Act. Ex. K (K. Sonderling Vacancy Reform Act Submission). Those roles remain fulfilled today, no matter how much Plaintiffs contend otherwise.[2]

Plaintiffs likewise fundamentally misunderstand how MBDA functions under its current workload. As explained, the nature of MBDA's grant work has changed significantly since the advent of the new Administration and consistent with the Court's preliminary injunction: MBDA reduced 40 Business Center grants to 7 Business Center grants (approximately an 83% reduction) and 43 CRP grants to 22 CRP grants (approximately a 49% reduction), with all CRP funding having also been obligated to date. It is thus disingenuous for Plaintiffs to suggest, as they do, that "nine full-time employees" are necessary to "[s]ervic[e] MBDA's existing grant portfolio" when that portfolio has shrunk drastically in size and when MBDA is attempting to adjust its staffing accordingly. ECF No. 88 at 8. Plaintiffs compound their error by asserting that this reduced grant workload cannot be serviced by Director of Business Centers Kelly Mitchell alone. *Id.* at 8–9.

---

[1] Ms. Mitchell had previously served as Deputy Chief of Staff between March and October 2025. *See* ECF No. 85-1 ¶ 2.

[2] Plaintiffs' insistence that both positions are vacant in their Motion directly contradicts their representation to this Court in their Response to Defendants' Statement of Undisputed Facts. *Compare* ECF No. 93 at 7–8, 10 (contending that only "*one* of those two positions is currently unfilled" (emphasis added) (citation omitted)), *with* ECF No. 88 at 8 (asserting that these *two* positions are "currently vacant").

But Ms. Mitchell, who had been serving as Deputy Chief of Staff for MBDA for 6 and a half months before reassignment, would not be servicing such grants alone. As Plaintiffs admit, MBDA has entered into an agreement through September 29, 2026, with a contractor, Corner Alliance, to provide administrative support for such grants. ECF No. 86-6 at 3–4 (explaining that Corner Alliance can "support with recipient communications, scheduling, follow up, receipt of information, and general records sorting"). And moreover, Grants Management Division Grant Officers and Specialists within the Department of Commerce handle the business management and administrative aspects of these awards, including but not limited to approving awards and amendments that obligate or de-obligate funds, and attorneys within the Office of the General Counsel ("OGC") ensure compliance with statutes, regulations, and Agency policy. *See* ECF No. 86-6 at 3–4. This Court should thus reject Plaintiffs' attempts to artificially inflate MBDA's current roles and responsibilities, which MBDA can easily fulfill in its new, streamlined form.

The same is true for the Parren J. Mitchell grant program and rural business center program. Neither program had been established under the Biden Administration or before the Court's preliminary injunction. *See* ECF No. 88-6 at 4–5. Nor have Plaintiffs even taken issue with the state of these programs under the Biden Administration or before the Court's preliminary injunction. Against that backdrop, the RIFs at issue could hardly prevent MBDA from fulfilling these statutory obligations in violation of the preliminary injunction. But in any event, the Dabbar Memorandum states that, for both programs, "there would be sufficient staff at MBDA after the RIF to establish this program, with the assistance of [National Institute for Standards and Technology] staff for logistical assistance, subject to funding availability" if needed. *Id.* at 4–5. Ultimately, though, it is the Department of Commerce that is best situated, both legally under 5

10

C.F.R. § 351.201 and factually based on experience, to determine how much time and effort is required for its work—not Plaintiffs or an anonymous declarant. *See, e.g.*, *Gandola*, 773 F.2d at 311 ("decision[s] on the composition and structure of the workforce" are "the essence of agency discretion"); 5 C.F.R. § 351.201(a)(1) (providing that "[e]ach agency is responsible for determining the categories within which positions are required, where they are to be located, and when they are to be filled, abolished, or vacated").

But there are other factual misstatements in Plaintiffs' motion, too. Take their assertion about MBDA's Capital Readiness Program as another example. According to Plaintiffs, that the Dabbar Memorandum does not address this *non-statutory*, *discretionary* grant program means that the RIFs preclude MBDA from fulfilling one of its *statutory* functions in contravention of the preliminary injunction. *See* ECF No. 88 at 9. That is nonsensical. Again, the preliminary injunction permits MBDA to "reduce the size or scope of the Agency Defendants as long as (a) the Agency Defendant provides a reasoned explanation for such action, and (b) the action will not prevent the Agency Defendant from *fulfilling any of their statutory obligations*." ECF No. 60 ¶ 3 (emphasis added). Yet even if included under the preliminary injunction's plain terms, MBDA can service the CRP with its remaining staff and support system for a straightforward reason: all of the money (approximately $62 million) has already been obligated. *See, e.g.*, Ex. H (10/29/2025 Business Outreach Ctr. Network, Inc. ASAP.gov Account Settlement Report) (revealing fully obligated award amounts). The main work remaining is to provide programmatic direction and approval for drawdowns. In MBDA's reasoned judgment, that task can be accomplished by Ms. Mitchell, supported by the Grants Management Division and assisted, as necessary, by those who help administer the Business Center program.

Plaintiffs similarly misstep when they claim that MBDA's information clearinghouse is

11

inactive. The clearinghouse, located at https://www.mbda.gov/research, remains a live webpage containing a variety of research reports for public consumption. And despite Plaintiffs' suggestions otherwise, there is no statutory requirement to regularly update it. *See* 15 U.S.C. § 9513(b); *contra* ECF No. 88 at 9 (contending that "[t]he information clearinghouse is not currently active" because "[t]he website referenced in the memorandum, mbda.gov/research, has not been *updated* in several years" (emphasis added)). All that MBDA's organic statute requires is that it "*establish* and *maintain* an information clearinghouse for the collection and dissemination to relevant parties (including business owners and researchers) of demographic, economic, financial, managerial, and technical data relating to minority business enterprises." 15 U.S.C. § 9513(b)(1) (emphasis added). Plaintiffs cannot impose an extra-statutory requirement upon MBDA that is entirely absent from § 1953(b) simply by their own say-so. In sum, the RIFs at issue will not prevent the remaining MBDA personnel, who work in conjunction with third-party contractors and with staff from other agencies within the Department of Commerce, from fulfilling any statutory obligation.

Without the benefit of the facts, Plaintiffs try to import the "reasoned decisionmaking" standard from the Administrative Procedure Act ("APA") and inject amorphous "reliance interests" into this dispute. *See* ECF No. 88 at 5–7. But neither "reasoned decisionmaking" under the APA nor the requirement to consider "reliance interests" appears anywhere in the Court's preliminary injunction order. That itself is enough to resolve this issue of injunction compliance. *See, e.g.*, Fed. R. Civ. P. 65(d) (explaining the specificity requirements of Rule 65). Perhaps unsurprisingly, Plaintiffs come up with no authority supporting their importation of such concepts here. Instead, they merely cite general administrative law cases such as *Michigan v. EPA*, 576 U.S. 743, 750 (2015), and *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm* 463 U.S. 29, 43 (1983). Never mind that neither of those cases concerns an agency's exercise of its employment-related, regulatory

12

discretion over the structure of its workforce—let alone compliance with a preliminary injunction. Likewise left critically unexplained in Plaintiffs' motion is how MBDA business centers possess a sufficiently concrete reliance interest in MBDA's pre-RIF staffing levels. Simply put, if anyone possesses reliance interests for this agency action, it is MBDA employees subject to the RIFs themselves and not Plaintiffs as third-party grants recipients. Yet even if reliance interests are relevant here, such interests were already accounted for in the agency's holistic assessment of MBDA's ability to fulfill its statutory obligations and advance the Secretary's priorities notwithstanding the RIFs, given the shortage of funds. Plaintiffs just refuse to accept the outcome of that assessment.

In any event, should this Court choose to borrow from administrative law principles, the RIF Notices pass that bar as well. Judicial review of agency decisionmaking under the APA is "deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). To change course, as MBDA has done here, an agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Or put another way, "it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Id.* Coupled with the Dabbar Memorandum, MBDA's RIF Notices—authorized by the "shortage of funds" under 5 C.F.R. § 351.201(a)(2) and effectuating Secretarial priorities—more than meet the APA's "reasoned decisionmaking" standard.

**II.     The MBDA RIF Notices Are Currently Enjoined in Any Event.**

Even if this Court were to find any of Plaintiffs' arguments persuasive (and it should not), MBDA RIFs are already subject to a preliminary injunction in *American Federation of*

13

*Government Employees v. Office of Management and Budget*, No. 25-cv-08302, ECF Nos. 56, 70. There, the Northern District of California enjoined the effective date of the RIF notices and tolled the RIFs' notice period for many of the Government-wide RIFs, including MBDA's. As a result, as long as that injunction remains, MBDA is unable to effectuate the RIF Notices. And to the extent that the RIF Notices become permanently enjoined, those Notices will never materialize regardless. Either way, the instant request would be moot. *See We the Patriots, Inc. v. Grisham*, 119 F.4th 1253, 1258 (10th Cir. 2024) (affirming the denial of a preliminary injunction as moot because the appellants had already "received the relief sought" through the issuance of an injunction in another case, so the requested injunction "would not have any real-world effect"); *Giambalvo v. Suffolk Cnty.*, 2025 WL 2627368, at *8 (2d Cir. Sept. 12, 2025) ("The grant of a preliminary injunction in one case moots a plaintiff's subsequent request for similar relief in a different case if 'any relief granted by the subsequent court would not have any real-world effect.'" (cleaned up)).

At a minimum, this Court should hold Plaintiffs' motion in abeyance while the injunction in the Northern District of California is in place to avoid what may be an unnecessary determination. Should this Court agree, MBDA will commit to provide a grace period of 14 days before it effectuates any such RIFs if the other injunction lifts, thus allowing for an orderly resolution of the pending dispute before this Court. To be clear, the RIF Notices themselves provide 60 days before they go into effect, and 55 days remain in light of the California court order. The clock, then, would not begin until 14 days after vacatur of the California injunction, and then

there would be another 55 days before the RIF would take effect—thus providing 69 days for the Court to resolve this matter, if necessary.[3]

Dated: October 31, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division, Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

*/s/ Abigail Stout*
ABIGAIL STOUT
(DC Bar No. 90009415)
*Counsel*
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 514-2000
Email: Abigail.Stout@usdoj.gov

*/s/ Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar No. 1025003)
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 598-7409
heidy.gonzaez@usdoj.gov

*Attorneys for Defendants*

---

[3] Defendants explained all of this to Plaintiffs in an effort to resolve this dispute and avoid burdening the court. Specifically, MBDA proposed to Plaintiffs that the parties agree to staying this dispute pending a lifting of the Northen District of California injunction and providing the grace period described above. Plaintiffs, however, rejected that proposal without counter.